[Civ. No. 2896. First Appellate District, Division Two.—August 12, 1919.]

## LEONARD L. KLEMMER, Respondent, v. SARAH LOUISE KLEMMER, Appellant.

[1] DIVORCE—DESERTION—RES ADJUDICATA—RECONCILIATION.—A decree determining the fact of the husband's desertion of the wife and denying him a divorce does not estop him from thereafter seeking a reconciliation and restoration; nor, in a subsequent action, does such decree constitute an adjudication of his desertion.

[2] ID.—RECRIMINATION—IMPLIED NEGATIVE FINDINGS.—In an action for divorce by the husband, in which the wife pleads certain recriminatory matters but does not seek a divorce, and no findings are made as to such matters, the court's finding of her desertion of the husband does not imply negative findings in regard to the recriminatory matters.

[3] ID.—RECRIMINATORY FACTS — PURPOSE OF PLEADING — NECESSITY FOR FINDINGS.—Recriminatory facts should be pleaded, but they are pleaded and proved as a defense simply and in bar of the plaintiff's cause. If evidence in support of the recriminatory mat-

---

1. Decree against plaintiff in suit for divorce as bar to subsequent divorce action, note, 26 L. R. A. (N. S.) 577.

Prior action for divorce in which claim for divorce might have been asserted by counterclaim, setoff, or cross-petition as bar to subsequent action for divorce, note, 8 A. L. R. 721.

3. Recriminatory defenses in suits for divorce, notes, 15 Am. Dec. 211; 86 Am. St. Rep. 333.

Right of recrimination as affected by comparative gravity of offenses, notes, 6 Ann. Cas. 171; .Ann. Cas. 1917A, 177.

.ters pleaded is introduced or properly tendered on behalf of the defendant, she is entitled to a finding on the issues raised by the pleadings, but if no evidence is introduced or offered in support of the recriminatory pleas, or if the evidence is of so weak a character as not to amount to a showing that the defendant at the time of the divorce suit had a subsisting cause of divorce, failure to find upon them may be excused.

[4] ID.—ADULTERY—FAILURE TO COMPLY WITH SECTION 1019, CODE OF CIVIL PROCEDURE—EVIDENCE INADMISSIBLE.—Where the defendant in an action for divorce charged the plaintiff with adultery, referring to the person with whom the acts of adultery are alleged to have been committed as Jane Doe, but, though having ample time without substantial excuse failed to cause the statutory notice to be given to her, upon objection being taken to the admission in evidence of the deposition of one E—— M——, offered in support of such ground of adultery on the ground that the defendant had failed to comply with the provisions of section 1019 of the Code of Civil Procedure, the trial court properly excluded such evidence; and its refusal in the middle of the trial to grant a continuance that such person might be served did not constitute an abuse of discretion.

[5] ID.—ADULTERY AS RECRIMINATION—WANT OF FINDING—ERROR.—In such case, there having been no showing of the existence of a cause of action for divorce subsisting in the defendant upon the ground of adultery, failure to find upon such issue did not constitute reversible error.

[6] ID.—EXTREME CRUELTY — RELATIONS WITH ANOTHER WOMAN — DECLARATION IN HER WILL — ADMISSIBILITY OF PETITION.—Where the defendant in an action for divorce pleaded, by way of recrimination, extreme cruelty on the part of the plaintiff, based upon the latter's conduct and relations with another woman, but there was neither allegation nor offer of evidence charging such other woman with adulterous conduct, the court committed error in excluding as evidence a verified petition of the plaintiff filed in an estate in which such other woman was a beneficiary, and where he alleged the death of such woman and set forth her will in which he was named as a beneficiary, and therein referred to as her "fiancé" and she as his "betrothed wife."

[7] ID.—RELATIONSHIP WITH OTHER WOMAN—ADMISSIBILITY OF EVIDENCE.—In such action, there being no charge of adulterous conduct between the parties, evidence regarding the plaintiff's relationship with such other woman was admissible, not alone in support of the

6.  Relations or associations of spouse with persons of opposite sex as cruelty or abusive treatment within statute defining grounds of divorce, note, L. R. A. 1918D, 427.

defendant's recriminatory charges, but upon the issue of good faith on the part of the plaintiff in his offer of reconciliation.

[8] ID.—OFFER OF RECONCILIATION—GOOD FAITH—PRESUMPTION—EVIDENCE.—The presumption of good faith attends upon every act, unless the surrounding circumstances are such as to overcome the presumption; and in this action for divorce, the letters and conduct of the plaintiff, his relations with the other woman, and the latter's naming him in her will as a beneficiary thereunder, she referring to him as her betrothed husband, his claim to her estate under such will, his successive and unsuccessful suits for divorce, and his long-continued failure to provide support for his wife and child, showed that the element of good faith in connection with his offer of reconciliation was entirely lacking.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John T. Nourse, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank Freeman and John J. Barrett for Appellant.

W. T. Belieu and Jos. L. Taaffe for Respondent.

BRITTAIN, J.—The defendant appeals from an interlocutory decree of divorce.

The parties were married in 1906. In 1911 the husband sued for divorce upon the ground of desertion. She answered, resisting the divorce, and in a cross-complaint for separate maintenance alleged cruelty, failure of support, and desertion on the part of the husband. In that suit the husband was denied divorce. The judgment, among other things, determined the fact of the husband's desertion in 1911, and allowed the wife $50 per month for the support of herself and her minor daughter, whose custody and control were awarded to the wife. The judgment was entered in June, 1912. From 1910 to 1913 the plaintiff did not see his wife.

In August, 1913, with his mother, the plaintiff arranged for his wife to meet him at the Hotel Sutter in San Francisco. In addition to that of the plaintiff and his wife, the only testimony given concerning this meeting was by the

8. Necessity of good faith in seeking reconciliation after desertion, note, 138 **Am. St. Rep.** 155.

plaintiff's father. There was other evidence of demonstrative character contained in the letters, written after the meeting, from the plaintiff to the defendant. It is in opposition to the plaintiff's oral testimony that his wife then refused to return to him.

[1] On behalf of the appellant it is claimed that the decree in favor of the defendant in the first divorce suit was an adjudication of the plaintiff's desertion and that his offer of reconciliation was too late. To support this position reliance is placed on a decision where it was held that when the wife has a right of action for divorce she is not obliged to condone the offense. (*Benkert* v. *Benkert,* 32 Cal. 467.) The supreme court has discussed a similar contention and disposed of it adversely to the appellant, holding that the wife is compelled to assert her right within a reasonable time (Civ. Code, sec. 124, subd. 3), and that under the provisions of section 101 of the Civil Code either party. in good faith may seek a reconciliation and restoration, when refusal of the other to conform thereto constitutes a desertion on his or her part, which, if continued for one year, becomes a ground of divorce. (*McMullin* v. *McMullin,* 140 Cal. 117, [73 Pac. 808].)

The prior desertion of the husband was not the only recriminatory matter pleaded by the wife. She alleged that the plaintiff had inflicted upon her grievous mental suffering in that, in 1913, he became the affianced husband of one Logan Tooley Clark, sometimes known as Logan Tooley, and that by publication in the daily newspapers in Willows and in San Francisco the fact had become known to many of the friends and acquaintances of the defendant, to her great humiliation and mental anguish. It is further alleged, by way of recrimination, that the plaintiff, in the years 1914, 1915, 1916, and 1917, had lived openly, notoriously, and scandalously at various places in this state with a woman other than his wife, named in the answer as Jane Doe, the defendant forbearing to give the true name of this woman. Substantially the same facts are set forth, coupled with the additional fact of alleged adultery between the plaintiff and the fictitiously named Jane Doe. There was no objection on the part of the plaintiff to the sufficiency of the pleading of any of these matters of recrimination. There was no finding upon any of them. On behalf of the appellant it is argued

that the failure to find on the recriminatory pleas of extreme cruelty and adultery of the plaintiff, as well as those regarding the unsatisfied original judgment, willful neglect, and desertion, evidenced by the judgment in the prior suit, constitutes fatal error.

[2] On behalf of the respondent it is argued that because the defendant, in pleading the recriminatory matter, did not seek a divorce from her husband, the court's finding of her desertion implied negative findings in regard to the recriminatory charges. The position of the respondent in this respect cannot be upheld. "Recrimination is a *showing* by the defendant of any cause of divorce against the plaintiff, *in bar of the plaintiff's cause of divorce.* (Civ. Code, sec. 122.) . . . [3] Recriminatory facts should be pleaded, but it would seem they are pleaded and proved as a defense simply and in bar of the plaintiff's cause." (*De Haley* v. *Haley,* 74 Cal. 492, [5 Am. St. Rep. 460, 16 Pac. 248].) If evidence in support of the recriminatory matters was introduced or properly tendered on behalf of the wife, she was entitled to findings upon the issues raised by her pleading. (*Kusel* v. *Kusel,* 147 Cal. 52, [81 Pac. 297].) It has been held that if no evidence was either introduced or offered in support of the recriminatory pleas, failure to find upon them might be excused. The same result would follow if the evidence was of so weak a character as not to amount to a showing that the wife at the time of the divorce suit had a subsisting cause of divorce. (*White* v. *White,* 82 Cal. 427, [7 L. R. A. 799, 23 Pac. 276].)

In regard to the charges of adultery and cruelty, based upon the cohabitation of the plaintiff with the fictitiously named Jane Doe, on the trial the defendant sought to introduce the deposition of one E—— M——, in which with frankness which under other circumstances might have been commendable, she detailed at length the facts of her continued meretricious relationship with the plaintiff in the years 1914, 1915, and 1916. Objection was made to the introduction of this deposition on the ground that the pleadings had not been served upon E—— M—— in accordance with the provisions of section 1019 of the Code of Civil Procedure. The purpose of that section is to give one whose reputation might be assailed in divorce proceedings an opportunity to appear and defend against the offensive charges. When ob-

jection was made to the introduction of the deposition an application for the continuance of the case so that formal service might be made upon E—— M—— was refused.

On behalf of the appellant it is argued that E—— M—— was not named in any of the pleadings, and, therefore, she was not within the protection of the section. The record shows that the case was presented upon the theory that Jane Doe and E—— M—— were names used to designate the same person. It is further argued that since in her deposition the witness had stated facts which warranted either the conclusion that she did not desire to defend her reputation or was unable to do so, and since she necessarily knew of the pendency of the action as well as the nature of the charges against her, the deposition should have been received. It is also urged that since the section does not in terms provide a penalty for its nonobservance, and the rejection of the deposition amounted to a penalty, it was beyond the power of the court, in effect, to add a penal clause omitted by the legislature from the statute. The statute was passed to be obeyed. No party to a suit in equity may justify disobedience of a statute upon which his right depends by the statement that he did not think the observance of the law was necessary. In any suit in equity where it appears that proper, as distinguished from necessary, parties are not in court, it is within the discretion of the chancellor to order them to be brought in and to continue the trial of the case until such order shall have been obeyed. [4] E—— M—— was not a necessary party to the action. The defendant had had ample time to cause the statutory notice to be given to her, and offered no substantial excuse for disregard of the statute. Under these circumstances the refusal to grant a continuance in the middle of the trial was not an abuse of the discretion vested in the trial judge. The defendant went to trial lacking the ability to make preliminary proof necessary to the establishment of this plea in bar. It was not error to exclude the deposition. For the reasons stated, in regard to the exclusion of the deposition, the trial court did not err in excluding certain questions asked of the plaintiff in regard to his relationship with E—— M——. [5] Failure to find on the issues of adultery with Jane Doe, the fictitiously named defendant, was not reversible error, because there was no showing of the existence of that cause

of action for divorce subsisting in the defendant upon that ground. (*White* v. *White, supra.*)

[6] The conditions surrounding the exclusion of evidence in regard to the alleged extreme cruelty of the plaintiff in the matter of his engagement to marry Logan Tooley were entirely different. There was neither allegation nor offer of evidence charging her with adulterous conduct. Section 1019 of the Code of Civil Procedure has no application to this charge. It was that during the marital relationship the plaintiff had become the affianced husband of Logan Tooley and that publicity given to this fact caused the defendant such mental suffering as to stamp the act as one of cruelty. To support this charge the defendant offered in evidence a petition, verified by the plaintiff and filed in the matter of the *Estate of Martha L. Tooley*, the sole beneficiary of whose will was Logan Tooley. Before distribution in that estate Logan Tooley died. The plaintiff in this case sought to prevent the distribution in the *Estate of Martha L. Tooley* to other persons and to have distribution made to the administratrix of the *Estate of Logan Tooley*, otherwise known as Logan Tooley Clark. In the petition the plaintiff set forth that Logan Tooley died on August 6, 1913, leaving a last will reading as follows:

"I, Logan Tooley Clark, sometimes known as Logan Tooley, do hereby will and bequeath all the property of which I die possessed to Leonard Lenus Klemmer (with the exception of $25 per month to my Aunt Lizette Herndon-Leddy as long as she lives) to be his, to have and to hold as a deed of my love and affection from me his betrothed wife. I desire to state that I am of sound mind and make this will of my own volition on this fourteenth day of May, A. D. Nineteen Hundred and thirteen.

"LOGAN TOOLEY CLARK.

"Understand all my property real and personal with the exception of $25 per month is to be given to Leonard Lenus Klemmer, my fiance.

"L. T. C."

In his verified petition the plaintiff alleged that he is "the same Leonard Lenus Klemmer, and the same person named and referred to in said last will and testament of said Logan Tooley Clark, hereinabove set forth." He then alleged the facts concerning the proceedings in the *Estate of Logan*

*Tooley Clark* and the appointment of an administratrix of that estate with the will annexed, together with the fact of the admission of the will to probate. The plaintiff then alleged that said administratrix "is entitled to have distributed to her all the residue of the property of the estate of Martha L. Tooley, deceased, for the purpose and to the end that she, as such administratrix, may administer thereon, and to have the same, to wit, the residue distributed to me, the said Leonard Lenus Klemmer, subject to and in accordance with the provisions of the last will and testament of said Logan Tooley Clark, deceased."

This evidence was rejected by the trial court. It was material, relevant, and competent in support of the defendant's recriminatory charge of cruelty.

[7] The plaintiff was asked numerous questions, to which a blanket objection and ruling was made regarding his relationship with Logan Tooley. In none of these questions was there any charge of adulterous conduct between the parties. The date of the meeting at the Hotel Sutter had been fixed by the plaintiff by a reference to the burial of Logan Tooley. Both the plaintiff and his father testified regarding the conversation at the meeting concerning his claims against Logan Tooley's estate, and in his letters to the defendant the plaintiff repeatedly referred to those claims. The plaintiff's deposition had been taken and much of the evidence which was excluded was to the effect that the plaintiff and Logan Tooley had been engaged in vaudeville in Reno, Nevada, and had subsequently agreed to go to Chicago, where they were similarly engaged for about a year. In the deposition, also, and excluded by the ruling of the court, was the plaintiff's statement that while in Chicago with Logan Tooley the plaintiff had commenced a second action for divorce against his wife, but that it had never resulted in a judgment because, as he said, of some conflict in the laws. The will in which the plaintiff was described as the betrothed husband of Logan Tooley was made in May, 1913. She was buried early in August, 1913. The meeting at the Hotel Sutter was within a few weeks of her death and before the excluded petition was verified by the plaintiff. The evidence offered was admissible, not alone in support of the recriminatory charges, but upon the issue of good faith on the part of the husband, by a showing of which

42 Cal. App.—40

his offer of reconciliation only could have been supported under the rule declared in *McMullin* v. *McMullin*. The defendant was entitled to a finding upon the issue of the husband's cruelty pleaded in bar.

[8]   The appellant contends there was no evidence of good faith on the part of the husband in asking the wife to return to him at the Hotel Sutter meeting. The presumption of good faith attends upon every act, unless the surrounding circumstances are such as to overcome the presumption. The long-continued and adjudged desertion by the plaintiff, his failure to provide support for his wife and child, his successive and unsuccessful suits for divorce, the will of Logan Tooley Clark describing the plaintiff as her betrothed husband, made shortly prior to the alleged offer of reconciliation, and his publication and reliance upon that will shortly after the offer of reconciliation, are all circumstances tending to overcome the presumption of his good faith. When, added to these circumstances, the letters written by the plaintiff to the defendant after the meeting at the Hotel Sutter are considered, it appears that the element of good faith was entirely lacking. There is no real or substantial conflict in the evidence.

There has been some attempt on the part of the respondent to shift the date of the meeting at the Hotel Sutter from August, 1913, to some time in August, 1914. The plaintiff's letters, coupled with his testimony, show there was but one such meeting. After the meeting and continuing until some time in 1915, the plaintiff wrote to his wife some thirty letters, expressing his fondness for her, and from time to time explaining to her that he was not yet ready to take her to Willows, because, as he said in one of his letters, it would cause the judge before whom his claim against the estate of Tooley was pending to say he was trying to get that estate solely for the purpose of going back to his wife. The plaintiff first testified that he thought his father was at the Hotel Sutter meeting. After luncheon he testified positively that his father was there. The father testified he was present. In important details the statements of the father and son were at variance. In the first of the series of letters, which bore internal evidence of having been written by the plaintiff at Willows on the day following the meeting at the Hotel Sutter, he spoke of having reached Willows at 4 o'clock

in the morning, of having that morning told his father of the meeting, and of his father laughing and crying because of his happiness at its outcome. The son testified that one Reva, a former wife of his brother, was present at the meeting. In the same letter the plaintiff wrote that he "did not tell Otto or Reva anything, just to see what they would say, and they both said, 'I hope you and Sadie go back together. I'm so happy I don't know which way to turn.'" In this and numerous other letters he urged his wife to burn the letter. It is inconceivable that if the father and Reva were present at the meeting he should have told his father about it on his return to Willows the next morning or that Reva did not know all about what took place.

In this case the plaintiff had also alleged acts of extreme cruelty on the part of his wife, upon which a very large amount of extremely noisome evidence was introduced by and on behalf of the plaintiff. The trial court found that the charges of extreme cruelty were not sustained. The plaintiff's statements under oath in support of those charges were corroborated in many particulars by the evidence of members of his family. If his statements were true, the charges were amply proved. The finding of the court that they were not proved irresistibly leads to the conclusion that the plaintiff, considered as a witness, was within the rule that a witness false in one particular is to be distrusted in others. (Code Civ. Proc., sec. 2061, subd. 3.) It is not necessary to proceed further with an analysis of the evidence. If the errors at law did not require the reversal of the judgment, this court would be compelled to sustain the appellant's attack upon the ground of the insufficiency of the evidence to support the judgment.

The judgment is reversed.

Langdon, P. J., and Haven, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 11, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 9, 1919, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court, after decision by the district court of appeal of the first appellate district, division two, is denied.

In denying the application we withhold our approval from that portion of the opinion dealing with the question of the admissibility of the deposition of one "E—— M——" referred to therein. The determination of this question is not essential to the reversal of the judgment.

All the Justices concurred, except Olney, J., who was absent.