First Judicial District Court of Warren County.

GENERAL MOTORS ACCEPTANCE CORPORATION, A COR-
PORATION, PLAINTIFF, v. HAYES MOTOR COMPANY,
A CORPORATION, J. RUSSELL DOYLE, SHERIFF OF
WARREN COUNTY, AND JOHN DOE, BEING THE ONE
IN POSSESSION, DEFENDANTS.

Decided April 12, 1934.

For the plaintiff, *Chivian & Chivian.*

For the defendant, *Clark C. Bowers.*

TALLMAN, J.  In January, 1933, one Robert J. McKeon
purchased under a conditional sale contract from Moore
Chevrolet Company, Incorporated, a 1932 Chevrolet one
and one-half ton truck, Motor No. 2MB09-11470, Serial
T3354309, which conditional sale contract was assigned to
the plaintiff herein.  General Motors Acceptance Corporation
is engaged in what is commonly called "the finance business,"
and more specifically, in the business of purchasing for valu-
able consideration, conditional sale contracts covering, among
other things, automobiles.  The said conditional sale con-

tracts reserve title in the seller, or its assignee, until the full purchase price has been paid by the buyer of the vehicle. Robert J. McKeon, having defaulted in the payments due under the terms of the conditional sale contract, executed by him, the vehicle was repossessed and the title cleared in accordance with the Uniform Conditional Sale act, *Pamph. L.* 1919, *ch.* 210. The vehicle was then returned to Moore Chevrolet Company, Incorporated.

On October 30th, 1933, Moore Chevrolet Company, Incorported, again sold the vehicle to one M. H. Latting, residing at 223 Thompson street, Roselle, New Jersey, who executed a conditional sale contract for the vehicle. The contract was thereupon assigned to General Motors Acceptance Corporation for value. The conditional sale contract was filed in the office of the register of deeds for Union county on November 8th, 1933, in accordance with sections 5 and 6 of the Uniform Conditional Sale act, section 5 providing for the filing of the contract, or a copy thereof, within ten days after the making of the conditional sale contract, and section 6 providing that the contract, or a copy, shall be filed in the office of the county clerk or where there is a register of deeds, in the office of such register of deeds in the county in which the goods are first kept for use by the buyer after the sale.

On November 6th, 1933, while the afore-described vehicle was being operated at Buttsville, it was seized for overloading, of which fact General Motors Acceptance Corporation became aware in January, 1934, as a result of an investigation instituted by reason of the fact that M. H. Latting had defaulted in the terms and conditions of the contract executed by him. As a result of the investigation, it was ascertained for the first time by General Motors Acceptance Corporation, that this vehicle still bore the registration plates of Robert J. McKeon, the first conditional vendee from whom the vehicle had heretofore been retaken.

General Motors Acceptance Corporation demanded possession of the vehicle from J. Russell Doyle, sheriff of Warren

county, and from a representative of Hayes Motor Company, in whose custody and possession the vehicle had been placed by the sheriff. The sheriff refused to deliver possession of the vehicle to General Motors Acceptance Corporation until and unless the fine assessed against the alleged owner of the vehicle had been paid, which, of course, General Motors Acceptance Corporation refused to do. Hayes Motor Company refused to deliver the vehicle to General Motors Acceptance Corporation until the payment of the fine to the sheriff and payment of its garage bill for storage, which General Motors Acceptance Corporation also refused to pay.

These facts were established at the trial of the above matter, and the matter resolves itself to the following questions of law, there being no dispute as to the facts:

(1) Is General Motors Acceptance Corporation liable for the payment of the fine as the owner of the vehicle in accordance with the provisions of the Motor Vehicle act?

(2) Does the fine imposed against the owner of the vehicle and assessable against the vehicle come within the scope of the Uniform Conditional Sale act providing for certain liens to be paramount to the rights of the conditional vendor?

(3) Was there such a removal of the vehicle from Union county to Warren county as would necessitate a refiling of the conditional sale contract in Warren county, and

(a) If there was such a removal, did General Motors Acceptance Corporation have such knowledge as would debar it from its right to possession of the vehicle by reason of its failure to refile?

(4) Does General Motors Acceptance Corporation have the right by virtue of its conditional sale contract, to maintain replevin proceedings for the possession of the vehicle?

(5) Does this case come within the prohibition of section 121 of the District Court act?

Point 1. General Motors Acceptance Corporation is not such an owner in the contemplation of the Motor Vehicle act as would make it liable for the payment of a fine for overloading.

*Pamph. L.* 1933, *ch.* 157, provides as follows:

"Provided that no automobile, commercial vehicle, trailer, semi-trailer, or tractor, shall be registered by the commissioner of motor vehicles unless the same are equipped with rubber tires on all wheels; and provided, further, that the owner of any commercial vehicle, tractor, trailer or semi-trailer, whose vehicle shall be found overloaded on a public highway or operated with a load beyond the gross weight shown in the registration certificate * * * shall be fined not less than $100 nor more than $250 for the first offense, &c., &c."

Admitting that the vehicle in question was overloaded, and that the fine which is sought to be charged and for payment of which the vehicle in question is being detained, can the vehicle be so detained as aganst General Motors Acceptance Corporation, the finance company. I think not in view of *Pamph. L.* 1926, *ch.* 257, which is a supplement to the Motor Vehicle act and which provides as follows:

"The word 'owner' as used in the act to which this act is a supplement shall also be taken to mean and include a person acquiring possession of a motor vehicle under and by virtue of a conditional sale contract, lease, bailment, agreement, chattel mortgage or other security agreement."

Surely, from a reading of this excerpt from the statute, it can clearly be seen that the intention of the legislature for the purpose of the Motor Vehicle act and all its provisions, applies solely to the person in whose name the vehicle is, or is presumed to be registered, omitting specifically and entirely the finance company who are the owners of the vehicle only by virtue of their conditional sale contract.

Under the Uniform Conditional Sale act, the conditional vendor or finance company is construed to be the owner of the vehicle, the conditional sale act specifically stating that a conditional sale is actually a bailment.

Reading *Pamph. L.* 1926, *ch.* 257, and *Pamph. L.* 1933, *ch.* 157, together, the construction that must necessarily be placed upon these two sections of the same act is that the

owner in contemplation of law for the purpose of the Motor Vehicle act is none other than the registered owner as it appears in the records of the commissioner of motor vehicles at Trenton.

It is undoubtedly true that General Motors Acceptance Corporation is the legal owner of the vehicle in view of its conditional sale contract. However, the Conditional Sale act stands separate and apart from the Motor Vehicle act, which fact was specifically stated in the case of *General Motors Acceptance Corporation* v. *Smith,* reported in 127 *Atl. Rep.* 179, where in an opinion by Mr. Justice Katzenbach, speaking for the Court of Errors and Appeals, he specifically states:

"This act stands by itself," referring to the Conditional Sale act.

In the case above cited, we have a situation which might be comparable to the situation at bar. In the cited case, the Foley Chevrolet sold to one Deitzel an automobile under a conditional sale contract, which contract was assigned to General Motors Acceptance Corporation. Deitzel sold the vehicle to one Smith in violation of his agreement, from whom General Motors Acceptance Corporation demanded possession, which was refused, whereupon General Motors Acceptance Corporation instituted a replevin action against Smith. The lower court nonsuited General Motors Acceptance Corporation on the ground that the assignment of the conditional sale contract to General Motors Acceptance Corporation did not transfer the absolute title to the car and that such title can only be obtained by compliance with chapter 168 of the laws of 1919, which is the Motor Vehicle act. In reversing the decision of the lower court, Mr. Justice Katzenbach states:

"In directing the entry of a nonsuit, we think the trial court erred. In the first place, it was not necessary that in the transfer between Foley and the Acceptance Corporation there should have been compliance with chapter 168 of the laws of 1919. The purpose of that act was to prevent the

sale of stolen automobiles. This is clearly indicated by the provisions of the act which require that every motor vehicle sold or purchased shall contain a manufacturer's number and which prohibits the sale or purchase of motor vehicles having obliterated or altered numbers."

Certainly, in view of the Conditional Sale act, the Motor Vehicle act as above cited, and the case of General Motors Acceptance Corporation *v.* Smith, the plaintiff herein is not such an owner of the vehicle as to make it liable for the payment of a fine for overloading.

Point 2 and 3. The fine imposed against the vehicle should not be assessable against the plaintiff herein, the conditional vendor, for the following reasons:

Section 5 of the Uniform Conditional Sale act (*Pamph. L.* 1919, *ch.* 210) provides as follows:

"Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy, a lien upon them before the contract or copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

The state is not such a lienholder, purchaser or attaching creditor as would take it out of the scope of the Uniform Conditional Sale act, and further, that in view of having filed the contract in the county where the chattels were first delivered for use of the buyer, within ten days after the making thereof, any claim, lien or alleged lien acquired within that ten-day period is subsequent to the rights of the conditional vendor. This point has been definitely decided in the case of *Bloomingdale* v. *Cook,* 8 *N. J. Mis. R.* 824, wherein the court says:

"That a seller filing his conditional sale contract within ten days after the execution thereof, has absolute protection for such period although intervening parties purchase or a levy is made before filing."

Admitting, for the purpose of argument, that the state is such a lienholder as would bring it within the scope of the Uniform Conditional Sale act, then any rights of the state against the vehicle are subordinate to the rights of the conditional vendor in view of the fact that the testimony showed conclusively that the contract was filed within ten days after its execution. In the event that the question be raised regarding the failure to refile in view of a removal of the chattels from Union county to Warren county, I desire to cite the case of *Hare & Chase* v. *Tomkinson,* reported in 129 *Atl. Rep.* 396, wherein in an opinion by Mr. Justice Katzenbach, speaking for the Supreme Court, says:

"The word 'removal' in the New Jersey statute [referring to the Conditional Sale act] does not mean a mere bringing of the truck within the territorial limits of New Jersey. If this were the law, then no seller who had sold in some other state an automobile upon the installment plan, with reservation of title, could have his rights protected under the agreement by which the automobile was sold against a New Jersey creditor if the automobile was brought within the State of New Jersey."

At page 398, Mr. Justice Katzenbach makes an important assertion which I think is entirely dispositive of the question here involved:

"It seems to me that by fixing the *situs* of the truck in Pennsylvania * * * a removal to New Jersey within the meaning of the statute could only be accomplished by the buyer forming, first, an intent in his mind to remove the truck to New Jersey; and secondly, actually removing the truck to some place in New Jersey, which the buyer fixed as a New Jersey *situs* of the truck. It is like a change of domicile. A change of domicile can only be accomplished by a person intending, first, to change his domicile, and secondly, actually changing it. The two things must concur."

By no stretch of the imagination can the court possibly come to the conclusion that there was, first, an intention to change the *situs,* and secondly, an actual change from Union

county to Warren county. The detention of the vehicle in Warren county was not as a result of an intention by any of the parties to the conditional sale contract that the vehicle remain there, but was actually an enforced detention by the authorities.

Point 4. General Motors Acceptance Corporation has the right, by reason of its conditional sale contract, to maintain replevin proceedings.

This point has been decided by the case of General Motors Acceptance Corporation *v.* Smith, above referred to, wherein the court states:

"An absolute legal title to a chattel is not required to maintain a replevin action as held by the trial judge in the present case."

A special property in the chattel is all that is required to maintain an action in replevin as pointed out by Mr. Justice Kalisch in the opinion written by him in the case of *Conlen* v. *Lemmerman,* 87 *N. J. L.* 84. This special property the plaintiff had in the present case.

Another point that should be decided, is as to the question of the garage lien claim for storage. I think this question is sufficiently answered by the point raised throughout this memorandum, in addition to which I desire to submit the following excerpt from *Pamph. L.* 1925, *ch.* 33, *p.* 96, wherein it is stated:

"That all persons * * * engaged in the business of keeping a garage * * * at the request or with the consent of the owner or his representative, whether such owner be a conditional vendee or mortgagor remaining in possession or otherwise, has a lien upon such motor vehicle * * * provided, however, that such lien shall not be superior to, nor affect any lien, title or any interest of any person or corporation held by virtue of a prior conditional sale or a prior chattel mortgage properly recorded."

Point 5. The question has been raised whether or not this case comes within the prohibition of section 121 of the District Court act which states:

"No replevin shall lie in the case of distress for any tax, assessment or fine to be collected or levied in pursuance of any law of this state, &c."

This section does not apply to the case of taking of goods of a person who is in nowise subject to the tax. *Noyes* v. *Finneran,* 12 *N. J. L. J.* 216. If it had been the legislative purpose to apply this rule to the present case the statute would have been more comprehensive. The owner, or finance company in this case, not being the owner contemplated in the Motor Vehicle act brings it within the terms of one who is in nowise subject to the tax and, consequently, not within the prohibition contemplated by section 121 of the District Court act. *Rockefeller* v. *Lees,* 51 *Id.* 140.

No damages were proved at the trial.

I find the right to possession of the vehicle in question in the plaintiff as against J. Russell Doyle, sheriff of the county of Warren, and Hayes Motor Company, a corporation, and John Doe, the one in possession.