[L. A. No. 16456. In Bank.—April 18, 1941.]

ROLAND M. COMFORT, Respondent, v. HELEN E. COM-
FORT, Appellant.

Monta W. Shirley, Jones & Snow, George W. Nilsson, Edward V. Jones and Taylor N. Snow for Appellant.

Henry G. Bodkin for Respondent.

THE COURT.—This case is before this court as the result of an order granting a hearing after decision in the District Court of Appeal, First Appellate District, Division One. After a review of the record and consideration of the legal propositions involved, we have decided to adopt as the decision of this court, the opinion prepared by Mr. Presiding Justice Peters when this case was before the District Court of Appeal, with the modifications as will hereinafter appear.

"Defendant wife appeals from a judgment granting plaintiff husband an interlocutory judgment of divorce on the ground of extreme cruelty. The decree awarded custody of the son of the parties to the defendant, with provision for $125 per month for his support. The defendant is a resident of New Jersey, but appeared in and contested the action.

"The parties were married on November 11, 1919, in Washington, D. C. The child was born in 1922. The respondent is a graduate of Annapolis and is a commander in the United States Navy. He has had a long and distinguished career in the navy. The parties legally separated in March of 1924. In 1923 the wife was living abroad with her family, the husband then being on sea duty. Early in 1924, in response to cabled requests from her husband, the wife returned to New York. The day after her arrival the husband notified his wife that he intended to institute annulment proceedings. Thereafter, in March of 1924, annulment proceedings were instituted by the husband in the state of New York, the then residence of the parties. In that proceeding the husband charged that his wife was afflicted with epilepsy and that she was disloyal to the government of the United States. Judgment went for the wife in the annulment suit, and this judgment was affirmed on appeal without a written opinion.

(*Comfort* v. *Comfort*, 217 App. Div. 752 [216 N. Y. Supp. 814].) While that action was pending on appeal, the wife, in January, 1925, instituted an action in New York for divorce from bed and board, which, in this state, would be tantamount to an action for separate maintenance. In December of 1928 judgment was entered in favor of the wife in the separate maintenance action, the decree granting the wife a divorce from bed and board, awarding her the custody of the child and $50 per week for the support of herself and the child. This judgment was affirmed on appeal. (*Comfort* v. *Comfort*, 227 App. Div. 1 [236 N. Y. Supp. 544].)

"A short time thereafter the wife moved to Vineland, New Jersey. The husband was transferred to sea duty and spent some time in China. While in China he failed to send to his wife the weekly award for her support and the support of the child. In June of 1933 he was transferred to California. In September of 1935 he instituted the present action for divorce on the ground of extreme cruelty. Shortly thereafter the wife commenced an action in New Jersey for an injunction to restrain the husband from further prosecution of the present divorce action. Notice of this action was given the husband by personal service in California. The husband failed to appear and a final decree restraining the husband from maintaining or prosecuting the California divorce action was entered in New Jersey.

"The complaint in the present action charges the wife with various acts which, it is claimed, constitute extreme cruelty. Some of these charges were abandoned on the trial, and as to others the trial court found in favor of the wife. On several of the charges, however, the trial court found in favor of the husband.

"Substituted service was made on the wife. She appeared in the action. By her answer she denied that the husband was a resident of California, and denied, generally and specifically, each and every allegation of cruelty set forth in the complaint. In addition, the answer set forth numerous affirmative defenses. Among other things, she alleged that the California court had no jurisdiction over the subject matter of the action, for the reason that the marital *res* is in Vineland, New Jersey; that the action in California is barred by the New York separate maintenance decree; that New Jersey has enjoined the prosecution of the action; that the hus-

band has been guilty of laches; that in fact defendant, based on the facts found by the New York decree, has a cause of action for divorce against the husband. The prayer of the answer was that the complaint be dismissed; that plaintiff be restrained and enjoined from prosecuting the divorce action or from molesting or bothering defendant and the minor child; that defendant be allowed reasonable attorney's fees and costs, and such other relief as may be equitable and just.

"After a trial at which the major evidence was based on depositions, judgment was entered for the husband. The trial court found against all the affirmative defenses. It also found that the husband was a *bona fide* resident of California and of the county of Los Angeles for the requisite period; that 'since the marriage of plaintiff and defendant, the said defendant has treated plaintiff in a cruel and inhuman manner and has wrongfully inflicted grievous bodily injury and grievous mental suffering on plaintiff herein . . . '. The court also found that the plaintiff and the defendant are fit and proper persons to have the custody of the child, but that it is to the best interests of the child to remain in the custody of the mother; that the plaintiff should pay $125 per month for the support, maintenance and education of the child; that plaintiff is eight months delinquent in the payment of the alimony and support awarded the defendant by the New York decree.

"On this appeal many contentions are made by appellant. The cause has been exhaustively and ably briefed by counsel for both parties. Appellant urges at great length that, because of the New York separate maintenance decree, and, because of the New Jersey injunction, California has no jurisdiction over the divorce proceeding even though the husband is a resident of California. Appellant also urges that, by reason of the New York decree, as a matter of law, she has a perfect recriminatory defense. It is also contended that the acts of alleged cruelty as found by the trial court, and as they appear from the evidence, do not constitute extreme cruelty within the code definition of those terms. These points will be considered in order.

"*Is the respondent husband precluded from maintaining the present action by virtue of the New Jersey injunction?*

"In the present action the trial court found that the New Jersey court was without jurisdiction to render the injunction

decree. The husband was not served in the injunction proceedings in New Jersey, and at no time had he been a resident of that state. He was personally served in Los Angeles.

█ "An injunction is obviously a personal decree. It operates on the person of the defendant by commanding him to do or desist from certain action. █ It is a fundamental rule of jurisdiction that constructive service on a nonresident is not effective so as to permit a court to render a valid judgment *in personam* which will be within the protection of the full faith and credit clause, or, in fact, that will be valid in the state where rendered. (*Pennoyer* v. *Neff*, 95 U. S. 714 [24 L. Ed. 565] ; *In re Culp*, 2 Cal. App. 70 [83 Pac. 89].)

█ "Appellant recognizes this doctrine, but contends that the New Jersey injunction operates upon the *res*, that is, the marital status; that she being the innocent party, according to the New York decree, the marital domicile followed her to New Jersey; that New Jersey had jurisdiction over the *res*, and had jurisdiction to protect it by rendering the personal injunction decree; that this decree is entitled to recognition in California. Appellant cites cases from New Jersey which indicate that in that state the courts will grant injunctions restraining prosecution of divorce actions in other states although the defendant has not been personally served or has not appeared in New Jersey. (*Gross* v. *Gross*, [N. J. Ch.] 180 Atl. 204; *Haring* v. *Kauffman*, 13 N. J. Eq. 397 [78 Am. Dec. 102] ; *Perlman* v. *Perlman*, 113 N. J. Eq. 3 [165 Atl. 646] ; *Di Brigida* v. *Di Brigida*, 116 N. J. Eq. 208 [172 Atl. 505] ; *Knapp* v. *Knapp*, [N. J. Ch.] 172 Atl. 343.) It is quite significant, however, that appellant cites no case holding that other states must or will give recognition to such a decree under the full faith and credit clause. Whatever effect the New Jersey decree might have on the husband were he to be found within the confines of the state of New Jersey, we are confident that such a decree, not based on personal service within the jurisdiction, is not entitled to full faith and credit under the Constitution, and should not be recognized as a matter of comity as against one ·of our own citizens.

█ *"Does the New York separate maintenance decree, coupled with the fact that appellant wife is a resident of New Jersey, deprive the courts of California of jurisdiction of the present proceeding?*

"Appellant argues that the California courts have no jurisdiction over the marital *res* for the reason that the New York separate maintenance decree conclusively established that she was the innocent party, and that under the cases, the marital domicile follows that of the innocent party. Great reliance is placed on the case of *Delanoy* v. *Delanoy,* 216 Cal. 27 [13 Pac. (2d) 719, 86 A. L. R. 1321]. In that case a wife brought an action for divorce in California. The husband defended on the ground that he had secured a Pennsylvania divorce. The last place the parties had lived together as husband and wife was California, and this state was still the domicile of the wife. The Supreme Court held that, even though the husband had been a *bona fide* resident of Pennsylvania at the time he secured his divorce, such decree having been secured by constructive service on the wife was not entitled to full faith and credit and would not be recognized under the doctrine of comity, until California first determined for itself who was the innocent party. It was held that the plaintiff wife in the California action could establish in that action the invalidity of the Pennsylvania decree by proving that she was the innocent party, and that defendant husband, plaintiff in the Pennsylvania action, had, in effect, perpetrated a fraud on the wife and on the Pennsylvania court in procuring a divorce in that state. The California Supreme Court also held that if, in fact, the wife was the innocent party, the marital *res* remained with her in this state, and that, under such circumstances, the decree of the Pennsylvania court, so far as this state was concerned, was void because of lack of jurisdiction over the subject matter. The court held, and this is the doctrine relied upon by appellant in the instant case, that when the parties separate the marital *res* follows the domicile of the innocent party.

"There are obvious factual and legal distinctions between the Delanoy case and the instant one. In the case now before the court it is not the plaintiff, a resident of California, as it was in the Delanoy case, who is attempting to attack the foreign decree. Rather, it is the defendant, a nonresident of California, who seeks to make use of the rule of the Delanoy case for the purpose of establishing her point as against a resident of California, that this state has no jurisdiction of the marital *res,* which necessarily follows her because she was adjudged the innocent party by the New York

decree entered in 1928. In the Delanoy case service on the wife in the Pennsylvania action was by publication, and she did not appear therein. In the present case the wife has appeared in the California action. Although it is true that by answer she objected to the jurisdiction of the California court, she also answered on the merits, and requested affirmative relief. If we assume the marital *res* attached itself to the innocent party—the wife—as a result of the New York decree, and followed her to New Jersey when she changed her domicile, the real question would seem to be whether by coming into this state and contesting the action on its merits, and asking for affirmative relief, she has conferred jurisdiction over the marital *res* on the courts of this state. Suppose that in the Delanoy case the wife was the innocent party, but nevertheless she appeared in and contested the Pennsylvania action and asked for affirmative relief, and, further, suppose the Pennsylvania court had decided against her. Could she then have attacked the Pennsylvania decree by bringing an action in California and proving to the satisfaction of the California court that she was the innocent party? It would seem that she could not.

"Appellant wife urges that she has not submitted the marital *res* to the jurisdiction of the California court, even if that could be done by appearing generally without objection to the jurisdiction of the California court, for the reason that by answer she objected to the jurisdiction of the California court as well as contesting on the merits. She contends that this was the only legal method of raising the point that the court had no jurisdiction over the subject matter. The trial court held that by appearing in the action and seeking affirmative relief, she had estopped herself from asserting that the California court was without jurisdiction.

"There is another fundamental fallacy in appellant's argument on this point. She assumes that, once having been adjudicated the innocent party, the marital domicile forever follows her, and that her husband can never, under any circumstances, secure a divorce for causes arising after the entry of the separation decree. If the husband can secure a divorce from the wife, after the wife has secured a decree of separate maintenance, for causes arising after the entry of the separate maintenance decree, it must be because the marital domicile is then with the husband.

"It must be remembered that in the present action the trial court did not treat the separate maintenance decree as a nullity. It found that the decree was final and conclusive as to the matters adjudicated by it. But the trial court also found that the wife was guilty of various marital offenses after the separation. This is of · considerable importance. The separate maintenance decree entered by the New York court in 1928, so far as this point is concerned, simply established that in 1928 and prior thereto the wife was the innocent party. It could not, and did not, establish her continued innocence subsequent to that date. If it is the law that a husband may acquire a cause for divorce after a separate maintenance decree has been secured by his wife for causes arising after the entry of such decree, then it necessarily follows that under such circumstances the marital domicile is no longer exclusively attached to her. In the subsequent divorce action the court must determine that the husband is then the innocent party and has been purged of his former misconduct. Under some circumstances, the husband, in such a situation, must be able to acquire an independent residence for purposes of divorce, and that court must be deemed ·to have jurisdiction of the marital *res*. Since this is so, the California court in the present action had jurisdiction to ascertain whether, after the separation, the wife had committed a marital offense, and whether the circumstances were such that the husband could lawfully secure an independent domicile which would also be the marital domicile. If jurisdiction over the marital *res* follows the domicile of the innocent party, and, if the husband can lawfully become the innocent party by reason of acts occurring after his wife secures a separate maintenance decree, clearly California has jurisdiction to determine whether the facts exist to give it jurisdiction. This is in exact accord with the doctrine of the Delanoy case.

"There can be no doubt that in this state, under some limited circumstances, the husband may secure a divorce from his wife for causes arising after the wife has separated from him. It is true that in *Mayo* v. *Mayo*, 3 Cal. (2d) 51 [43 Pac. (2d) 535], the Supreme Court announced a contrary doctrine, but in *Stitt* v. *Stitt*, 8 Cal. (2d) 450 [65 Pac. (2d) 1297], the Mayo case, on this point, was expressly overruled. In the Stitt case a divorce was granted the husband for acts

of cruelty occurring after the parties had separated. The opinion intimates that the original separation was based on misconduct by the wife. But in *Cardinale* v. *Cardinale*, 8 Cal. (2d) 762 [68 Pac. (2d) 351], the wife secured a separate maintenance decree in California based on the cruelty of the husband. About eight years later the husband secured a Nevada divorce on grounds of extreme cruelty. The instant action was to terminate the allowance for alimony awarded the wife in the separate maintenance decree on the ground the parties were divorced. The court held that in the absence of a showing to the contrary it would be presumed that the acts of alleged cruelty upon which the husband relied occurred subsequent to the date of the separate maintenance decree, and, further, that the evidence was capable of the construction that a condonation of the husband's offense had taken place.

▮ *"Does the New York separate maintenance decree establish a recriminatory defense?*

"From what has been said it is clear that the California court had jurisdiction of the divorce proceeding. But this is not decisive of the present appeal. Among the other affirmative defenses pleaded by appellant wife was the defense of recrimination. She pleaded the New York separate maintenance decree and now urges that it establishes, as a matter of law, a perfect recriminatory defense. Under the facts of this case, we agree with that contention.

"Recrimination is defined in section 122 of the Civil Code as follows: 'Recrimination is a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce.'

' "It is the theory of appellant wife that the New York decree of 1928 conclusively established that she was entitled to a divorce at that time, and that such cause of divorce, judicially established, constitutes, as a matter of law, a recriminatory defense. Respondent's answer to this contention is two-fold. First, he contends, and the trial court found, that the judgment of the New York court in the separate maintenance action is not a recriminatory defense for the reason that it was not a showing by the wife 'of any cause of *divorce*' against the husband within the meaning of section 122 of the Civil Code. Secondly, it is contended, and the trial court found, that an unreasonable length of time had

elapsed since the occurrence of the matters determined in the separate maintenance action, and that such acts were therefore barred as a recriminatory defense. Neither of these contentions is sound.

"The New York decree was based on desertion by the husband and upon his cruelty. In reference to desertion the New York court found:

" 'That although the plaintiff has always conducted herself towards the defendant as a faithful, loving and obedient wife, the defendant disregarding his duty as a husband, and without plaintiff's consent, has been wilfully and continuously absent from the plaintiff for more than eight months prior to the commencement of this action, without any cause or justification therefor, and with intention not to return; and that the defendant has abandoned and deserted plaintiff.'

"Of course, in this state desertion must continue for one year to constitute cause for divorce (sec. 107, Civ. Code). The separate maintenance suit was filed in January of 1925. The trial was not had and the decree was not entered until December of 1928. The finding was that the husband had deserted the wife for eight months prior to the commencement of the action. Inasmuch as the decree purported to cover a period of only eight months rather than a year, we will not, for the purposes of this case, determine whether or not there was such a desertion as would constitute a ground for divorce and thus a lawful defense of recrimination.

"However, whether the desertion finding is sufficient to constitute grounds for divorce in this state is immaterial for the reason that the findings in reference to the cruelty of the husband clearly establish 'extreme cruelty' as these terms are defined in section 94 of the Civil Code. The New York findings on the issue of cruelty are as follows:

" '5. That since the said marriage between the plaintiff and the defendant, the defendant has treated the plaintiff in a cruel and inhuman manner, and that it has by reason of the premises become unsafe and improper for the plaintiff to live and cohabit with the defendant.

" '6. That in the month of January, 1924, the defendant cabled to the plaintiff who was at that time living abroad, requesting her in substance to come to America for the purpose of rejoining and living with the defendant, who prior to that time had been on duty at sea, aboard a battleship of

the United States Navy, pursuant to his profession as a naval officer; that pursuant to the said request the plaintiff did return to America in or about the month of March, 1924.

" '7. That thereafter, to wit, in the month of March, 1924, and after plaintiff's arrival in America with the child of the parties hereto, the defendant selected a boarding house on Columbia Heights, Brooklyn, N. Y. for the plaintiff to live with her said child.

" '8. That thereupon the defendant refused to live with the plaintiff at the said boarding house selected by him.

" '9. That thereafter the defendant instituted or caused to be instituted by his attorney in the Supreme Court, Kings County, an action against the plaintiff for an annulment of the marriage between the parties hereto, alleging under oath, among other things that the plaintiff was an epileptic; that the plaintiff knew at the time of her marriage to the defendant that she was an epileptic; that the plaintiff had fraudulently concealed from the defendant the said alleged epilepsy; that the plaintiff has represented herself to be a physically sound and fit person to marry to the defendant; that the plaintiff was disloyal to the United States of America; that she fraudulently represented herself to be loyal to the United States of America prior to said marriage; that the plaintiff was guilty of acts of disloyalty to the United States both before and after said marriage to the defendant; that all of said representations were false and were known to the defendant to be false at the time when made.

" '10. That thereafter the · said action for annulment brought by the defendant against the plaintiff came on for trial at a Special Term, Part II of the Supreme Court, Kings County on the 17th day of November, 1924, and that the defendant did then and there under oath testify in support of said allegations against the plaintiff, and did then and there encourage and cause others to testify against the plaintiff under oath in support of his said allegations against the plaintiff; that after the conclusion of said trial certain Findings of Fact and Conclusions of Law were made by the Trial Justice, finding in substance that all of the defendant's said allegations against the plaintiff were without foundation in fact, and that thereafter, to wit, on the 4th day of December, 1924, a final judgment was entered in said annulment action dismissing the complaint upon the merits.

" '11. That in the complaint in said annulment action brought by the defendant against the plaintiff, and upon the said trial, the defendant did charge the plaintiff with being an unfit person to have the care and custody of the child of the parties hereto; and that in said Findings of Fact made upon the trial of said action, a judicial finding was made that such allegations made by the defendant against the plaintiff were without foundation in fact, and that the plaintiff was and is a fit and proper person to have the care and custody of the child of the parties hereto.

" '12. That all of the said charges and allegations made by the defendant against the plaintiff as aforesaid were and are without foundation in fact, and were false and untrue, and that the same were made by the defendant against the plaintiff with malicious intent and for the sole purpose of freeing the defendant from his marital bond to the plaintiff and to avoid his obligation to support and maintain the plaintiff and with the purpose and design of taking from the plaintiff the custody and control of the child of the parties hereto.

" '13. That by reason of the premises, the plaintiff has suffered great mental anguish, pain and suffering, and has been humiliated, and plaintiff has been by reason of the premises under a great nervous, physical and mental strain, and that by reason of the premises it has become entirely unsafe and improper for the plaintiff to live and cohabit with the defendant, and the plaintiff has been and is in fear of acts of conspiracy and violence at the hands of the defendant in the event that she should not live and cohabit with the defendant.'

"The New York Supreme Court, Appellate Division, in affirming the separate maintenance decree, after reviewing the evidence and findings stated (*Comfort* v. *Comfort*, 227 App. Div. 1 at p. 3 [236 N. Y. Supp. 544]) :

" 'I am of the opinion that the prior action brought by this defendant against the plaintiff to annul their marriage on the ground of epilepsy and of disloyalty to the government of the United States, was not only unjustified, but was based upon false and malicious charges. This constituted cruelty, a sufficient basis for sustaining the judgment in this action. Further, the defendant abandoned the plaintiff and his child at the time of the commencement of the annulment action, and the only contribution to their maintenance and

support has been under the order and direction of the Supreme Court. It seems obvious to me that the defendant and his family have higher matrimonial ambitions than the plaintiff in this action, from whom he seeks to rid himself. The extent to which the defendant will go to accomplish his purpose is evidenced by the means to which he has resorted.'

"Section 94 of the Civil Code defines extreme cruelty as 'the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage'. Respondent contends that the above-quoted findings are insufficient to establish extreme cruelty because they fail to follow the precise terms of section 94, *supra,* in that there is no finding that the acts caused 'grievous' mental suffering. The finding, above quoted (finding No. 13) is that the acts complained of caused 'great mental anguish, pain and suffering'. Clearly, the acts found by the trial court in the New York action constitute extreme cruelty in this state. (*Polakoff* v. *Polakoff,* 51 Cal. App. 359 [196 Pac. 778]; *Cooper* v. *Cooper,* 88 Cal. 45 [25 Pac. 1062]; *MacDonald* v. *MacDonald,* 155 Cal. 665 [102 Pac. 927, 25 L. R. A. (N. S.) 45].) The failure to follow precisely the terms of the statute is immaterial where the acts found are such that as a matter of law they establish extreme cruelty (*Polakoff* v. *Polakoff, supra*).

"From what has been said it follows that appellant wife established, by the New York separate maintenance decree, that in 1928, under California law, she had a 'cause of divorce' against her husband within the meaning of section 122 of the Civil Code, *supra.*

"Respondent contends, however, and the trial court found, that the cause of divorce thus established by his wife was barred by lapse of time and by her laches. Section 124 of the Civil Code provides that: 'A divorce must be denied: . . . Three. In all other cases when there is an unreasonable lapse of time before the commencement of the action.' Section 125 of the Civil Code provides: 'Unreasonable lapse of time is such a delay in commencing the action as establishes the presumption that there has been a connivance, collusion, or condonation of the offense, or full acquiescence in the same, with intent to continue the marriage relation notwithstanding the commission of such offense.' Section 126 of the Civil Code provides: 'The presumptions arising from lapse of time may be rebutted by showing reasonable grounds for the delay in

commencing the action.' Section 127 of the Civil Code provides: 'There are no limitations of time for commencing actions for divorce, except such as are contained in section one hundred and twenty-four.' Respondent points out that the cause of divorce relied upon by his wife as a recriminatory defense is predicated on acts occurring prior to January of 1925—some ten years before the husband filed the present action. He also points out that most of the acts he relies on as establishing a cause of divorce against his wife occurred in 1932, and thereafter. Under such circumstances, he contends, the wife's cause of action is barred by the lapse of an unreasonable length of time. Respondent urges that under the cases whether a recriminatory defense is barred is a question of fact, and relies on such cases as *Kenniston* v. *Kenniston*, 6 Cal. App. 657 [92 Pac. 1037], where a delay of ten years was held to defeat a cause of action for divorce, and *Johnston* v. *Johnston*, 21 Cal. App. 181 [131 Pac. 81], where the same result was reached predicated on a six-year delay. Other cases are collected in 9 California Jurisprudence, page 692, section 60. The point involved in those cases was that under the facts surrounding the delay there involved there was at least a permissible inference that there had been 'connivance, collusion, or condonation', . . . " or full acquiescence in the same, with the intent to continue the marriage relation notwithstanding the commission of such offense. "But no such inference or presumption is possible in this case." The facts are uncontradicted that "Here the acts upon which the New York decree is predicated occurred in 1924. Immediately thereafter, in January of 1925, the wife filed her action for separate maintenance. That was the only relief she could secure in New York. The decree was entered in 1928. Since filing the separate maintenance decree it is admitted that the parties have lived separate and apart. There has been no attempt at a reconciliation. The New York decree established the appellant's legal right to live separate and apart from her husband." ■ There is not one word of testimony to support an inference or presumption of connivance, collusion, condonation or full acquiescence. "The evidence is positive and uncontradicted that there was no connivance, collusion or condonation," and the evidence being uncontradicted on these propositions it is a question of law whether or not there has been such an unreasonable lapse of

time as would give rise to the presumption under section 125 of the Civil Code of connivance, collusion, condonation, or full acquiescence in the same, with intent to continue the marriage relation. This is true regardless of whether the intent to continue the ''marriage relation'' be considered as merely a marital status or as actually living together as husband and wife.

■ ''The appellant cannot be charged with laches. Laches implies a failure to do something that a party should have done. What could appellant have done that she did not do? She acted promptly upon the occurrence of the acts constituting cruelty. She secured from the New York court all of the relief that court had power to grant. She could not sue her husband again on the same set of facts so as to procure any additional or different relief from that already obtained.'' Even assuming that, after she had resided for a time in New Jersey, she could have sued for divorce there, the circumstances must be remembered that respondent was in China for several years, and since 1933 has been in California; it would not have been until late in 1930 that she could have proceeded in New Jersey, where, according to respondent's claim, she would have had a cause of action on the ground of desertion after two years residence. The action here was instituted in 1935, between four and five years later. Furthermore, she could not have obtained full relief in an action in New Jersey because respondent being absent from that State, she would have to rely on substituted service of process, in which event the court would not have had jurisdiction to award her alimony or any allowance for the support of the child of the parties. (*De La Montanya* v. *De La Montanya,* 112 Cal. 101 [44 Pac. 345, 53 Am. St. Rep. 165, 32 L. R. A. 82].) ''For several years he was in China and since 1933 he has been in California. This case is entirely different from cases where the husband commits acts of cruelty, and the parties separate, the wife seeking no legal redress for the wrong committed. Many years later the husband sues for divorce and she sets up the acts committed by her husband as a recriminatory defense. In such case the trial court may properly indulge in the presumption that there has been 'connivance, collusion, or condonation of the offense, or full acquiescence in the same' within the meaning of section 125 of the Civil Code, *supra.*'' But where, as here, the evidence

is uncontradicted there has never been such an unreasonable lapse of time as will cause the presumption to arise.

■ "Respondent husband contends that such a doctrine will forever bar him from securing a divorce because of his misdeeds of 1924. That may be true. The doctrine of recrimination is based on the concept that he who seeks redress for the violation of a contract resting upon mutual and dependent covenants must himself have performed the obligations on his part. (9 Cal. Jur., p. 689, sec. 58.) It is part of the general equity doctrine that he who comes into equity must come with clean hands. The legislature has seen fit to make the doctrine an integral part of the law of this state. It is not for the courts to determine the rightness or wrongness of the doctrine so declared. That is a legislative and not a judicial function.

"While it is true, as already pointed out in this opinion, that under some limited circumstances a husband may secure a divorce for acts occurring after his wife has secured a separate maintenance decree, those circumstances do not exist in the instant case. In *Cardinale* v. *Cardinale*, 8 Cal. (2d) 762 [68 Pac. (2d) 351], there was evidence from which the trial court could reasonably infer not only a condonation, but also that the parties had actually resumed marital relations after the wife secured the separate maintenance decree. In every case cited by respondent there was either direct evidence or evidence from which an inference could be drawn that, after the wife secured her decree, there was either a reconciliation or a *bona fide* attempt to effect one. There is no such evidence in the instant case. Under such circumstances it must be held that, as a matter of law, the appellant has established a recriminatory defense." . . .

In view of this conclusion we do not find it necessary, nor would it serve any useful purpose, to review the sufficiency of the evidence in respect to cruelty found to have been inflicted by the wife.

The judgment appealed from is reversed.

Respondent's petition for a rehearing was denied May 15, 1941.