[Civ. No. 14122. Second Dist., Div. One. Oct. 20, 1943.]

SARAH McMILLAN PAUL, Appellant, v. JAMES MILLER et al., Respondents.

74

Percilla Lawyer Randolph and W. Neil Randolph for Appellant.

Hiram T. Kellogg for Respondents.

DRAPEAU, J. pro tem.—In the county of Bourbon, in the State of Kentucky, W. W. Massie died in 1906. Upon settlement of his estate, by direction of his will there was established a trust for the use and benefit of his only son W. C. Massie during his lifetime, with remainder over to the heirs of his body. In 1922 the son died, without issue. The son's executor filed a suit in equity in the Circuit Court of the State of Kentucky, to ascertain by judicial decree the persons entitled to the trust, and also to determine the validity of such claims as might be presented against the probate estate of the son. In this suit the heirs at law, devisees and creditors of W. C. Massie were defendants.

The circuit court determined that the trust property passed by inheritance to the son's heirs, the collateral kin of his father and mother, a moiety to each branch. As to heirship, this decision was affirmed by the Court of Appeals of Kentucky in 1924. (*Bourbon Agricultural Bank & Trust Co.* v. *Miller,* 205 Ky. 297 [265 S.W. 790].)

As a creditor defendant in this equity action the son's housekeeper presented claims for several thousand dollars for use and occupancy by him of her house and for nursing and caring for him in his declining years. These claims were disallowed. From this judgment the housekeeper appealed.

When the Court of Appeals of Kentucky adjudged her claims to be valid (*McMillan* v. *Massie's Ex'r,* 233 Ky. 808 [27 S.W.2d 416]), it was found that, notwithstanding the appeal, in 1927 or 1928 all the property of the estate had been distributed to the heirs at law, and nothing was left in the estate with which to pay the claims.

With the situation thus confronting the claimant, her legal remedies under the law of Kentucky are set forth in *Massie* v. *Paul,* 263 Ky. 183 [92 S.W.2d 11, 18], as follows:

"It was competent for the court by appropriate orders in the action to settle Massie's estate, to compel either a creditor, heir, devisee, or legatee to refund or make restitution of any sum, or a portion thereof, received by him under its orders, in excess of that to which he was entitled to accomplish an equitable distribution or to pay any creditor entitled thereto. How to accomplish such refund or restitution was entirely within the sound discretion of the court. . . . A procedure for that purpose may be on notice, for rule, or on pleading or a petition of any interested party to the action to settle the estate and if by an independent petition, a consolidation therewith."

November 29, 1930, the Circuit Court of Kentucky denied claimant's motion for a rule against the heirs to refund a sum sufficient to pay her judgment, and struck from the files her answer, counterclaim and cross-petition to accomplish the same objective.

January 10, 1931, claimant filed in the circuit court an independent petition for the same objective, but twelve of the heirs at law and devisees of Massie ''were not made parties and were never brought before the court in the independent action.'' (*Paul* v. *Fidelity & Deposit Co. of Maryland,* 277 Ky. 257 [126 S.W.2d 157, 158].)

Thereafter the equity action and the independent action were consolidated, the trial court dismissed the answer, counterclaim and cross-petition of claimant as against the twelve heirs not served with process, and rendered judgment against the rest of the heirs for the whole amount of the housekeeper's claim.

From this judgment appeal was taken, and the Court of Appeals of Kentucky made the following order:

''Wherefore, the judgment is reversed, with directions to the court to enter a judgment in favor of Sarah McMillan Paul against each of the heirs, devisees, and legatees of Massie, limiting her recovery against each to the proportionate part of the excess paid each of them, respectively, over and above the sum to which they were respectively entitled, and for proceedings consistent with this opinion.'' (*Massie* v. *Paul,* 263 Ky. 183 [92 S.W.2d 11].)

Pursuant to this mandate the following proceedings were had:

''On July 3, 1936, the trial court, pursuant to the mandate, entered judgment against the ten heirs who took the appeal, 'limiting appellant's recovery against each of them to the proportionate part of the excess paid each of them respectively over and above the sum to which they were respectively entitled.' Each of these ten heirs at law has paid in full this judgment. In this judgment it is recited that the court withholds judgment and takes further time as to the right of appellant to judgment against the twelve above named heirs who were not parties to the appeal; but on June 26, 1937, judgment was entered against these twelve, 'limiting appellant's recovery against each of them to the proportionate part of the excess paid each of them respectively over and above the sum to which they were respectively entitled,' the amount for which each was liable on the judgment ranging

from $359.12 to $2,611.88, the aggregate of the several liabilities of the twelve being slightly in excess of $15,000.00.'' (*Paul* v. *Fidelity & Deposit Co. of Maryland*, 277 Ky. 257 [126 S.W.2d 157, 159].)

It is upon the judgment thus obtained that the rights of the parties to this case in California are to be determined. Based thereon the claimant instituted an action in California to recover against three of the heirs of Massie, residents of this state. These three heirs were three of the twelve who ''were not made parties and were never brought before the court in the independent action.''

Upon the trial in the superior court, the Kentucky judgment was received in evidence. Countering its effect, the three California heirs testified they had not been in Kentucky for twenty-five years; that they had never been served with summons or complaint or other process in the independent action, and that they had not authorized any appearance by counsel for them in that proceeding. The trial court rendered judgment against the plaintiff claimant and in favor of the defendant heirs; from which judgment appeal has been prosecuted to this court.

 Under the full faith and credit clause of the United States Constitution a valid judgment of a sister state must be enforced by the courts of every other state. (*Biewend* v. *Biewend*, 17 Cal.2d 108 [109 P.2d 701, 132 A.L.R. 1264], and authorities there cited.)

 But before the courts of any state will enforce the judgment of a court of a sister state, there must have been jurisdiction to render the judgment.

 The foregoing recital of facts demonstrates that the Kentucky judgment was without jurisdiction and was not valid as against the California heirs. (*Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565]; *Haddock* v. *Haddock*, 201 U.S. 562 [26 S.Ct. 525, 50 L.Ed. 867]; *Harrington* v. *Superior Court*, 194 Cal. 185 [228 P. 15]; *Comfort* v. *Comfort*, 17 Cal.2d 736 [112 P.2d 259]; *Hammell* v. *Britton*, 19 Cal.2d 72 [119 P.2d 333]; *Carlton* v. *Miller*, 114 Cal.App. 272 [299 P. 738]; *duQuesnay* v. *Henderson*, 24 Cal.App.2d 11 [74 P.2d 294].)

 Appellant asserts that the consolidation of the heirship case and the independent action conferred jurisdiction upon the Circuit Court of Kentucky. But the fatal defect of want of service of process upon the California defendants, or of any other thing upon which to base jurisdiction, still re-

mained, despite the consolidation of the two cases. It is evident that as to these California defendants there was jurisdiction in the equity case and there was no jurisdiction in the independent action.

 Appellant also asserts that jurisdiction in the independent action may be predicated upon the fact that the California defendants were represented in that proceeding by the same counsel who appeared for them in the heirship case. There is evidence in the record which will support the finding of the trial court to the contrary.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied November 10, 1943, and appellant's petition for a hearing by the Supreme Court was denied December 16, 1943. Traynor, J., voted for a hearing.