[L. A. No. 14019. In Bank.—April 1, 1935.]

LUTHER T. MAYO, Plaintiff and Appellant, v. MARGUE-RITE MALONEY MAYO, Defendant and Appellant; LUTHER T. MAYO, INC. (a Corporation), et al., Defendants and Respondents.

Meserve, Mumper, Hughes & Robertson for Plaintiff and Appellant.

George Acret and Lawrence L. Larrabee for Defendant and Appellant.

Hunsaker & Cosgrove for Respondents.

PRESTON, J.—We have before us cross-appeals in a divorce action involving also the custody of three minor children as well as separate and community property rights. Plaintiff husband was awarded an interlocutory decree of divorce upon grounds of extreme cruelty. The defendant wife was awarded custody of the three minor children, with an allowance for their support and nursing of $500 per month to continue until the further order of the court. A large number of parcels of property were adjudged separate property of the husband, a smaller number were adjudged community property. The community debts were marshaled and held to be a charge upon the whole community estate. Subject to this charge the community property was equally divided between the spouses. A homestead declared by the wife upon property found to be separate property of the husband was dissolved and the wife was directed to vacate the former family residence in thirty days. The appeal of the wife is from the interlocutory judgment as a whole; that of the husband from the portion thereof dealing with the community property and awarding custody of the children to the wife, with said allowance for their support and care. The terms ''wife's appeal'' and ''husband's appeal'' will be used in the discussion that follows:

This whole case is permeated with strife and bitterness and is enveloped in a sordid atmosphere created by the charges relating to sex tendencies and practices. Not a

single proposition of law of importance is involved. Every question raised is in reality an issue of fact on which the evidence is in sharp and hopeless conflict. We have not found the slightest reason for a court of equity to extend its arm to give further relief to either party. The trial of the case was begun on September 29, 1931, and it covered a period of 90 days, during which the court actually sat and heard testimony on 56 days. The reporter's transcript comprises 26 volumes. The clerk's transcript is 396 pages. The wife has tendered a printed supplement of 4 volumes, comprising 1580 pages, together with an original brief of 400 pages and a reply brief of 115 pages. To this the husband has contributed a brief of 272 pages. The appeals reveal the expenditure of an enormous amount of effort, particularly on the part of counsel prosecuting the wife's appeal. The matter is segregated, arranged and indexed in such manner as to save the court much labor. But as each point urged is examined, the conviction that it is without substantial merit immediately arises.

That the trial court gave the cause a thorough and fair hearing and consideration is everywhere manifest. The findings show a conscientious endeavor on his part to justly resolve a hopeless and unfortunate marital tangle. He clearly had in mind, throughout the trial, saving as far as possible the reputation of the parties to the marriage contract as well as protecting from stigma and shame two sets of innocent children, to wit: the three children of the marriage and the husband's three children by a former marriage, who resided in the home. That the court handled the cause wisely and without prejudicial error, there is no doubt.

Just how many of the repulsive facts of this case we should make of record is a problem. It is now approaching four years since the trial ended. Doubtless ere this life has taken on a new meaning for both spouses. Each should, and probably would, shrink from an extended portrayal of the facts; however, the requirements of law will be met.

The action was commenced by the husband on January 11, 1930. His complaint charged some 24 specific acts of mental cruelty. The pleadings grew and multiplied as time passed. The pleadings upon which the case was actually tried consisted of an amended and supplemental complaint of the husband, answer of the wife and two or three amend-

ments and supplements to her amended cross-complaint for divorce and the husband's answers thereto. The final amendment of the wife's pleadings was one to discount the date of marriage in Alameda County, California, on August 24, 1923, and to show a prior marriage in Tia Juana, Mexico, on August 19, 1922. The purpose of this amendment was to secure the benefit of a finding showing a larger amount of community property. The court properly found the marriage date to be August 24, 1923, and the date of separation October 31, 1928.

The wife's cross-complaint charged cruelty on the part of the husband growing out of this conduct toward her subsequent to October 31, 1928, as well as arising out of allegations against her made by him in his several complaints, which allegations the wife alleged were false and maliciously urged and from which she suffered a loss of health and other injuries amounting to extreme cruelty. The wife also pleaded the defenses of condonation and recrimination. The defense of condonation was grounded on the fact that in June, 1927, the husband filed a former action for divorce upon charges of cruelty, which action later, and in July, 1927, he caused to be dismissed.

The principal findings upon which the court rested its judgment for the husband were that the charge made by the wife of sex degeneracy was false as well as her later charge that Robert Mayo, the thirteen year old son of the husband by a former marriage, had been guilty of sexual attacks upon the young half-sisters, then infant children, of the present marriage, resulting in a juvenile court proceeding. In summing up the situation the court found: "Each and all of said false charges of sexual degeneracy so made by defendant against plaintiff and the false charges filed against Robert Mayo without the knowledge of plaintiff have caused and each of them continues to cause plaintiff great humiliation, grief and mental anguish and physical suffering with the result that the ends and purposes of matrimony between plaintiff and defendant have been irreparably destroyed.''

We need only say here, without reciting in detail the further facts found, that they were amply sufficient to produce such grievous mental suffering as would justify the trial court in holding them to be proper grounds for grant-

ing plaintiff a divorce, under the rule found in the following, among other, cases: *MacDonald* v. *MacDonald,* 155 Cal. 665 [102 Pac. 927, 25 L. R. A. (N. S.) 45], *Clopton* v. *Clopton,* 162 Cal. 27 [121 Pac. 720], *Daroux* v. *Daroux,* 53 Cal. App. 223 [199 Pac. 1112], and *Weisburg* v. *Weisburg,* 214 Cal. 499 [6 Pac. (2d) 504].

At this point it should be noted that the court found to be untrue several specifications alleging unchaste acts upon the part of the wife, which the wife in turn specified as extreme cruelty entitling her to a decree of divorce. But under the facts as found by the court, its discretion in this behalf may not be overthrown. The court found: ''It is not true that said allegations were made recklessly or without knowledge or proof of the truth thereof or with knowledge on the part of plaintiff that the same were false or for the purpose of intimidating the defendant or for the purpose of injuring her reputation, or for the purpose of causing her any publicity nor were said allegations nor any of them made maliciously or fraudulently or for the purpose of injuring the defendant but on the contrary it is true that the same were made in good faith and upon information which plaintiff deemed to be reliable and in the belief on the part of plaintiff that they were true and it is true that plaintiff had at the time reasonable grounds for such belief.'' See cases above cited.

As to all other indignities imposed upon the wife by the husband, the court found that said indignities occurred subsequent to final separation of the parties, to wit: subsequent to October 31, 1928; hence such conduct was not proper grounds for divorce. In this connection it should also be observed that if the said matters were insufficient as a ground for divorce to the wife, they were likewise insufficient to establish the defense of recrimination. Likewise, the defense of condonation was not made out. The divorce action in June, 1927, followed the charge by the wife to others that the husband was a sex pervert. The court found that upon her plea to him, the action was dismissed. The necessary inference from this finding is that the wife withdrew her said charge and in turn promised conjugal kindness. The husband testified that he did not know the extent to which she had circulated the accusation at the time he dismissed the action. But, be that as it may,

the court further found that subsequent to said dismissal and prior to the date of separation the wife was guilty of other conjugal unkindness and cruelty, particularly the false charges against the son, Robert Mayo. The necessary effect of this finding was that the condonation, if any, theretofore existing, being conditional, had been properly revoked. (Sections 117 and 121, Civil Code.)

We have examined the rather nebulous contentions of the wife as to the insufficiency of the evidence to justify the findings as to items of separate and common property. There is no substance in them. The husband accounted, in a very plausible, if not substantial, manner, for every item of property and traced its origin. His books subsequent to January 1, 1925, were submitted to auditors employed by the wife. The income and assets and expenses subsequent to the marriage in August, 1923, and prior to January 1, 1925, were attested by a bookkeeper who claimed to have taken her data from the books of the husband then in existence and since lost or destroyed. The income tax report for the year 1924 was available. The income from all sources, during all the years from marriage to trial date, was rather accurately estimated. The community expenses were also tabulated. The rulings of the court in admitting secondary evidence of the books for the years 1923 and 1924 were clearly within its discretion. The wife has tossed into our laps almost 100 pages of undigested testimony received on this question of property and in the following desultory language leaves the question to its fate: "Since the evidence shows that all other property involved in the case was acquired subsequent to January, 1925, and since the plaintiff contends that all of said property is separate property only because it was supposedly acquired with funds coming from said special savings account, all property is therefore community property, and said findings are not supported by the evidence in all respects in which said findings are adverse to the defendant. Also, whether said findings are supported by the evidence, or not, said findings should be reversed and modified upon this appeal, to make the same find all of the property involved herein as community property, because the plaintiff did not show any reason why there should be any finding otherwise, and because the preponderance of

the evidence, and all of the evidence, shows all of said property to be community property.''

██ The cross-appeal of the husband is likewise clearly without merit. Fitness of both husband and wife to care for and have custody of the minor children was found to exist by the court. The allowance for their support, including nurse hire, was a fair and a proper exercise of discretion, clearly warranted by the evidence. Furthermore, the husband is not aggrieved by the property award made by the court. In fact, his entire appeal has all the earmarks of a mere counter-attack to maintain the *status quo* fixed by the trial court as to the wife's rights.

Further complaints as to rulings of the court in accepting or rejecting evidence are so clearly without merit that we shall not prolong this discussion.

The judgment in its entirety is affirmed.

Curtis, J., Langdon, J., Waste, C. J., and Shenk, J., concurred.

Rehearing denied.