[L. A. No. 21986. In Bank. Nov. 25, 1952.]

DAISY M. De BURGH, Appellant, v. ALBERT RAYMOND De BURGH, Respondent.

Max Fink, Jerry Rolston, Cyrus Levinthal and Leon E. Kent for Appellant.

Donald Armstrong for Respondent.

TRAYNOR, J.—Plaintiff Daisy M. De Burgh and defendant Albert Raymond De Burgh were married in California in October, 1946. They separated in February, 1949, and in the same year plaintiff brought this action for divorce on the ground of extreme cruelty. Defendant filed a cross-complaint for divorce, also on the ground of extreme cruelty. The allegations of cruelty were denied in the answers filed by each party. The trial court found "that each of the parties to this action has been guilty of acts of cruelty to-wards the other, and that such acts of cruelty by each toward the other, were provoked by the acts of the other." The court decided that "each party has been guilty of recrimination and neither is entitled to a divorce from the other." The court entered judgment that plaintiff take nothing by her complaint and that defendant take nothing by his cross-complaint. Plaintiff appeals "from the judgment signed and entered by the court" and from the order denying her motion for a new trial. Since the latter order is nonappealable, the appeal therefrom must be dismissed.

The evidence regarding cruelty is in conflict; it supports the finding that each party has been cruel to the other. Plaintiff's evidence tended to show that defendant was frequently intoxicated to excess, that he inflicted physical injury upon plaintiff on several occasions, that he boasted of his relations with other women, that he unreasonably criticized plaintiff's daughter, that he unjustly berated plaintiff concerning a former suitor, and that, although he was a lavish spender in other ways, he was penurious with plaintiff. Defendant's evidence indicated that plaintiff had unjustly accused him of dishonesty and homosexuality and had communicated to his business associate similar false and malicious statements.

Since the trial court found that defendant was guilty of acts of cruelty towards plaintiff, it is clear that the judgment denying plaintiff a divorce is not on the ground that plaintiff failed to prove the allegations of cruelty in her complaint. The judgment thus must be based either on the

finding that defendant's cruelty was provoked by plaintiff or on the ground that defendant established the defense of recrimination.

The finding that the cruelty of each party was provoked by the other party is inconsistent with the conclusion that recrimination was established. Cruelty that is provoked does not give rise to a cause of action. (*Truax* v. *Truax,* 62 Cal.App.2d 441, 444 [145 P.2d 88] ; *Popescu* v. *Popescu,* 46 Cal.App.2d 44, 49 [115 P.2d 208].) To establish recrimination, however, a cause of divorce must be shown. (Civ. Code, § 122; *Mayo* v. *Mayo,* 3 Cal.2d 51, 56 [43 P.2d 535] ; *Smith* v. *Smith,* 119 Cal. 183, 189-190 [48 P. 730, 51 P. 183] ; *Haskill* v. *Haskill,* 56 Cal.App.2d 204, 208 [132 P.2d 294].) Provocation and recrimination, therefore, are not complementary, but mutually exclusive, defenses. To justify extreme cruelty by one spouse under the doctrine of provocation, the misconduct of the other spouse must itself be a serious violation of marital obligations. (See *Eidenmuller* v. *Eidenmuller,* 37 Cal. 364, 364-365; *Popescu* v. *Popescu, supra,* 46 Cal.App.2d 44, 50.) The record in the present case fails to disclose any such violation on plaintiff's part that would justify the physical brutality and other misconduct of defendant. Defendant's acts of cruelty, as set forth in plaintiff's evidence, took place from the date of marriage until the separation of the parties, whereas defendant freely conceded at the trial that his allegations of plaintiff's cruelty were based solely upon plaintiff's accusations that he was dishonest and a homosexual, charges that were made no earlier than two or three days before the separation. Thus, although the evidence would support the finding that defendant's cruelty provoked the false accusations made by plaintiff, there is no evidence of any earlier misconduct by plaintiff that would justify defendant's cruelty. Under these circumstances, the decision of the trial court cannot be supported upon the theory of provocation rather than recrimination.

The determinative question on this appeal, therefore, is whether the findings and conclusions in this case warrant application of the doctrine of recrimination. It is apparent from the remarks of the trial judge at the close of the trial that he believed that the transgressions of each party necessarily precluded the granting of a divorce to either. On the other hand, the language of section 122 of the Civil Code indicates that the trial court may have abused its discretion

in disregarding the requirement therein that the cause of divorce of which one party is found guilty must be ''in bar'' of that party's ground of divorce against the other party. To resolve this conflict, we have studied the history of the doctrine of recrimination, its objectives, and the wording and legislative background of the applicable statutes.

It has sometimes been assumed that any cause of divorce constitutes a recriminatory defense. The legislative language, however, is ill-adapted to such a broad purpose. Read together, sections 111 and 122 of the Civil Code provide: ''Divorces must be denied upon . . . a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce.'' Had the Legislature meant to make every cause of divorce an absolute defense, it could easily have provided that: ''Divorces must be denied upon . . . a showing by the defendant of any cause of divorce against the plaintiff.'' We are bound to consider the additional requirement that such a cause of divorce must be ''in bar'' of the plaintiff's cause of divorce.

Much of the confusion concerning recrimination in California has proceeded from the erroneous discussion of the subject in *Conant* v. *Conant,* 10 Cal. 249 [70 Am.Dec. 717], which was decided before recrimination became a part of the statutory law. It was stated in that case that this defense is based on the doctrine that one who violates a contract containing mutual and dependent covenants cannot complain of its breach by the other party. Logically, such a theory would permit the party against whom the first marital offense was committed to ignore thereafter the duties imposed by the marriage ''contract,'' for in contract law a material breach excuses further performance by the innocent party. (Restatement of Contracts, § 274; Cal. Civ. Code, § 1689(2).)

In fact, however, the defense may be asserted without regard to whether the plaintiff or the defendant was the first at fault. (*Pullen* v. *Pullen & Holding,* 123 L.T.R. 203, 36 T.L.R. 506.)

The deceptive analogy to contract law ignores the basic fact that marriage is a great deal more than a contract. It can be terminated only with the consent of the state.

In a divorce proceeding the court must consider not merely the rights and wrongs of the parties as in contract litigation, but the public interest in the institution of marriage. The family is the basic unit of our society, the center of the

personal affections that ennoble and enrich human life. It channels biological drives that might otherwise become socially destructive; it ensures the care and education of children in a stable environment; it establishes continuity from one generation to another; it nurtures and develops the individual initiative that distinguishes a free people. Since the family is the core of our society, the law seeks to foster and preserve marriage. But when a marriage has failed and the family has ceased to be a unit, the purposes of family life are no longer served and divorce will be permitted. "[P]ublic policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed." (*Hill* v. *Hill*, 23 Cal.2d 82, 93 [142 P.2d 417]; *Weil* v. *Weil*, 37 Cal.2d 770, 783-784 [236 P.2d 159]; see, also, *Saltzgaver* v. *Saltzgaver*, 182 Md. 624, 636-637 [35 A.2d 810]; opinion of Bickley, J., in *Chavez* v. *Chavez*, 39 N.M. 480, 489 [50 P.2d 264, 101 A.L.R. 635].)

The chief vice of the rule enunciated in the Conant case is its failure to recognize that the considerations of policy that prompt the state to consent to a divorce when one spouse has been guilty of misconduct are often doubly present when both spouses have been guilty. The disruption of family relationships, the clandestine associations with third parties, and the oppressive effect upon children and the community are intensified. It is a degradation of marriage and a frustration of its purposes when the courts use it as a device for punishment.

Moreover, the historical discussion of the doctrine of recrimination in the Conant case is inaccurate. The court relied mainly on the decisions of the eminent English ecclesiastical jurist, Lord Stowell. It is significant that in his later utterances Lord Stowell viewed with regret the illogical and pernicious consequences of a mechanical application of the doctrine.[1] Even the medieval canon law, upon which Lord

---

[1] "I cannot blind myself to the fact, that the modern course of life and manners does not furnish those corrections of the mischiefs that may follow, which the Canon Law had anticipated in connection with its rule. There is no return to cohabitation, nor are there any means to be resorted to for the purpose of compelling it. In the state of separation, whether authorized or merely conventional, which usually takes place, there is certainly the increased danger of a spurious offspring; and as the regulation of property exists among us, the danger of separate debts, to the great eventual injury of the husband and his legitimate family." (*Proctor* v. *Proctor*, 2 Hag.Con. 292, 302, 161 Eng.Rep. 747, 751.)

Stowell relied, did not carry recrimination to the extreme of the Conant case; although permitted as a bar when the plaintiff sought a divorce for adultery, this defense was not accepted against a cause of divorce based on cruelty, for the church lawyers realized that public policy was not served by forcing a wife, even if guilty, to return to a home where her life was in danger. (Sanchez, De Sancto Matrimonii Sacramento, Lib. X, Disp. 18, No. 5, cited by Neuner, *Modern Divorce Law*, 28 Iowa L.Rev. 272, 279, n. 21. See, also, opinion of Lord Stowell in *Chambers* v. *Chambers*, 1 Hag. Con. 439, 452, 161 Eng.Rep. 610, 614.)

In any event ecclesiastical authorities are not relevant in view of the fact that ecclesiastical courts could not grant absolute divorce. They could decree only limited divorce, equivalent to a judicially recognized separation. Such a court's action was usually limited to a determination of certain property rights of the parties or the husband's duty of support.[2] It is not surprising, therefore, that ecclesiastical lawyers placed more emphasis upon the comparative guilt of the parties than Parliament did in cases of absolute divorce. Parliament appears to have tempered the doctrine of recrimination with discretion. On the question of recrimination in cases of absolute divorce, the Conant opinion, necessarily looking for its authority to parliamentary practice, relied exclusively upon *Simmons' Case*, 12 C. & F. 339, 8 Eng.Rep. 1438, in which Parliament denied a divorce,[3] overlooking other cases involving recrimination where Parliament allowed divorce. (See, for example, *Major Campbell's Case*, 42 H. of L. Jour. 141, reprinted in MacQueen, A Practical Treatise on the Appellate Jurisdiction of the House of Lords [1842], p. 590.)

[2] Even in this area, the ecclesiastical law and common law were not in agreement. For a collection of cases, see Beamer, *The Doctrine of Recrimination in Divorce Proceedings*, 10 Univ. of Kansas City L. Rev. 213, 222-236.

[3] Strictly speaking, Simmons' Case did not turn upon recrimination. Adultery on the part of the plaintiff husband was alleged, but the House of Lords refused to decide whether or not that recriminatory defense had been proved. Instead, the divorce was denied on the ground that the husband had driven his wife and daughter into the streets and, in spite of ample means, had refused to support them; this conduct on his part directly led to the wife's becoming a street-walker and prostitute. In reality, therefore, Simmons' Case is to be viewed as an example of the doctrine of provocation. (*Cf. Johnson* v. *Johnson*, 14 Cal. 459, 460; *Truax* v. *Truax*, 62 Cal.App.2d 441, 444 [145 P.2d 88]; *Popescu* v. *Popescu*, 46 Cal.App.2d 44, 49 [115 P.2d 208]; *Annen* v. *Annen*, 79 Cal. App. 626, 627-628 [250 P. 580].)

Only a year before the Conant decision, in fact, Parliament had created jurisdiction in the English courts to grant absolute divorce and in so doing expressly provided for judicial discretion on the issue of recrimination. (Divorce and Matrimonial Causes Act of 1857, 20 & 21 Vict., c. 85, § 31.)

The California Legislature, in enacting the Civil Code in 1872, did not follow the principles of the Conant case. The code provisions on recrimination made two important departures from the existing law.

First, the code requires that the defendant prove a cause of divorce against the plaintiff to establish this defense. The requirement of the Conant case that plaintiff be ''without reproach'' no longer prevails. (*Mayo* v. *Mayo,* 3 Cal.2d 51, 56 [43 P.2d 535]; *Smith* v. *Smith,* 119 Cal. 183, 189-190 [48 P. 730, 51 P. 183]; *White* v. *White,* 82 Cal. 427, 452 [23 P. 276, 7 L.R.A. 799]; *Haskill* v. *Haskill,* 56 Cal.App.2d 204, 208 [132 P.2d 294]; *Popescu* v. *Popescu,* 46 Cal.App.2d 44, 49 [115 P.2d 208]; *Hilton* v. *Hilton,* 54 Cal.App. 142, 149 [201 P. 337]; *Klemmer* v. *Klemmer,* 42 Cal.App. 618, 622 [187 P. 85].) The dictum to the contrary in *Shapiro* v. *Shapiro,* 127 Cal.App. 20, 24 [14 P.2d 1058], is without support even in the textbook authority cited and is clearly opposed to the statute.

Second, as shown by the notes of the commissioners who drafted the code, the Legislature rejected the strict rule of recrimination of the ecclesiastical courts. Significantly, neither the Conant case nor any other divorce cases appear among the precedents listed by the commissioners as the basis of the statute. It is apparent from the decisions that were listed that the Legislature intended that divorce cases involving recrimination be governed by the same principles that apply generally throughout our jurisprudence. Although the plaintiff's fault has always been regarded as an important element in the decision of any case, our courts have traditionally refused to exalt that element above the public interest. Thus, in *Freeman* v. *Sedwick,* 6 Gill. (Md.) 28, 40 [46 Am.Dec. 650], a fraudulent conveyance case cited by the commissioners, Mr. Justice Story's Equity Jurisprudence is quoted as follows: ''Relief is not granted, where both parties are truly *in pari delicto,* unless in cases where public policy would thereby be promoted.'' (Vol. I, p. 317, § 298; see, also, 14th ed. [1918], vol. I, pp. 395-398, § 421.) This respect for the public interest has formed the basis of a recognized exception to the equitable doctrine of unclean hands,

with which the defense of recrimination has become increasingly identified since the enactment of the code.　■　It is clear that the Legislature, in relying upon judicial principles of general application, intended that in divorce litigation the fault of the plaintiff should have no more significance than elsewhere in the law. Apparently with this purpose in mind it worded the statute to require that a cause of divorce shown by defendant must be "in bar" of the plaintiff's cause of divorce. It would have defeated its own purpose had it closed the avenues to divorce when the legitimate objects of matrimony have been destroyed. The perpetuation of an unwholesome relationship would be a mockery of marriage.

The California cases decided since the enactment of the Civil Code contain little analysis or discussion of the principles governing the defense of recrimination. In *Brenot* v. *Brenot,* 102 Cal. 294, 296 [36 P. 672], this court correctly stated the rule to be that "a court of equity is *authorized* to enter a judgment dismissing an action of divorce, where both parties are seeking a decree, and the evidence discloses them to be equally guilty of the misconduct alleged." (Italics added.) Again, in *Glass* v. *Glass,* 4 Cal.App. 604, 607 [88 P. 734], the appellate court, in affirming the judgment with regard to property issues, observed without objection that the trial court had found both parties guilty of extreme cruelty but nevertheless had granted the plaintiff a divorce. In some cases, however, it has been assumed, apparently with the acquiescence of the parties themselves, that the mere showing of a cause of divorce against the plaintiff is sufficient. (See *Sweasey* v. *Sweasey,* 126 Cal. 123, 129-130 [58 P. 456]; *Mattson* v. *Mattson,* 181 Cal. 44, 47 [183 P. 443]; *Helpling* v. *Helpling,* 50 Cal.App. 676, 680-681 [195 P. 715]; *Gough* v. *Gough,* 101 Cal.App.2d 262, 268-269 [225 P.2d 668].) This failure to exercise the discretion authorized by the statute has enabled the thinking engendered by the Conant case to survive by default. Important developments of the past several decades have made it increasingly clear that the courts can no longer decline to exercise the discretion inherent in the clean hands doctrine.

The rising divorce rate in the United States has compelled a growing recognition of marriage failure as a social problem and correspondingly less preoccupation with technical marital fault. This trend is strikingly exemplified by the recent amendment of section 92 of the Civil Code designating in-

curable insanity as a ground for divorce. Formerly, no matter how vicious the conduct of an insane spouse, he could not be divorced, for the law refused to find in him the guilt essential to a marital offense. (See *Cohn* v. *Cohn*, 85 Cal. 108, 109 [24 P. 659]; *Wray* v. *Wray*, 19 Ala. 522, 525; 4 A.L.R. 1333; 42 A.L.R. 1531.) The Legislature has come to realize, however, that when a union is dominated by insanity, fulfilment of the normal purposes of marriage is hopeless. What was once a bar to divorce is now recognized as a justification for divorce. Still more striking in recognition of this trend has been the enactment of legislation in many states authorizing divorce when the spouses have lived apart for a required number of years. Marriage failure, rather than the fault of the parties, is the basis upon which such divorces are granted. (See *George* v. *George*, 56 Nev. 12, 17-18 [41 P.2d 1059, 97 A.L.R. 983]; *Lemp* v. *Lemp*, 62 Nev. 91, 101-102 [141 P.2d 212, 148 A.L.R. 1104]; 51 A.L.R. 763; 97 A.L.R. 985; 111 A.L.R. 867; 152 A.L.R. 336; 166 A.L.R. 498. *Cf. Pavletich* v. *Pavletich*, 50 N.M. 224, 229-234 [174 P.2d 826].)

It would be froward indeed for the court, when it is called upon to evaluate an alleged recriminatory defense, to ignore the growing awareness that a marriage in name only is not a marriage in any real sense. In other fields, equity does not deny relief on the ground of plaintiff's unclean hands when to do so would be harmful to the public interest. (See *Johnson* v. *Yellow Cab Transit Co.*, 321 U.S. 383, 387 [64 S.Ct. 622, 88 L.Ed. 814]; *Leo Feist, Inc.* v. *Young*, 138 F.2d 972, 974-976; *Cleveland, C., C. & St. L. Ry. Co.* v. *Hirsch*, 204 F. 849, 857-858 [123 C.C.A. 145]; *Menzel* v. *Niles Co.*, 86 Colo. 320, 325-326 [281 P. 364, 65 A.L.R. 995]; *Saylor* v. *Crooker*, 97 Kan. 624, 627-628 [156 P. 737, Ann.Cas. 1918D 473]; *Deutschmann* v. *Board of Appeals of Canton*, 325 Mass. 297, 299 [90 N.E.2d 313]; *Cameron* v. *International Alliance of Theatrical Stage Emp.*, 118 N.J.Eq. 11, 20-21 [176 A. 692, 97 A.L.R. 594]; *Cosden Oil & Gas Co.* v. *Hendrickson*, 96 Okla. 206, 210 [221 P. 86]; *cf. Hobbs* v. *Boatright*, 195 Mo. 693, 715, 720-724 [93 S.W. 934, 113 Am.St.Rep. 709, 5 L.R.A.N.S. 906]. See, also, 1 Story on Equity [14th ed. 1918], § 421, pp. 396-398; Pomeroy on Equity [5th ed. 1941], § 941, pp. 733 et seq.; Chafee, Some Problems of Equity [1950], p. 95; 48 L.R.A. 842; 120 A.L.R. 1461; 13 C.J., Contracts, § 441, p. 497; 30 C.J.S., Equity, §§ 98a, 98b, pp. 487-491; 12 Am.Jur., Contracts, § 214, pp. 729-731.) ■ Such a rule is even more appropriate in marital litigation, where the social consequences of the

court's decree are of the utmost importance. (See *Sullivan* v. *Sullivan*, 219 Cal. 734, 736 [28 P.2d 914] [annulment]; *Loughran* v. *Loughran*, 292 U.S. 216, 228-230 [54 S.Ct. 684, 78 L.Ed. 1219] [marital property rights].)

It bears noting how frequently divorces are uncontested. In many cases neither spouse is "innocent," and yet, by agreement, one of them defaults to ensure a divorce. Thus a strict recrimination rule fails in its purpose of denying relief to the guilty. Moreover, it exerts a corrupting influence on the negotiations that precede the entry of such a default. The spouse who more desperately seeks an end to a hopeless union is penalized by the ability of the other spouse to prevent a divorce through the assertion of a recriminatory defense, and the more unscrupulous partner may obtain substantial financial concessions as the price of remaining silent. Were the clean hands doctrine properly applied, it would encourage estranged couples to bring their differences before the chancellor, where the interests of society as a whole can be given proper recognition and where settlement negotiations can be supervised and unfair advantage prevented.

A mechanical application of the doctrine of recrimination is by no means universal. In some states, the defense has been limited by requiring that the plaintiff's offense be of the same type as the defendant's or that it involve equal guilt. (See *Bast* v. *Bast*, 82 Ill. 584, 585; *Appeltofft* v. *Appeltofft*, 147 Md. 603, 605 [128 A. 273]; *Hokamp* v. *Hokamp*, 32 Wn.2d 593, 596 [203 P.2d 357].) Such limitations are not entirely satisfactory, however; even when misconduct is identical the court should be permitted to exercise a sound discretion in the public interest. Several states expressly recognize judicial discretion concerning recrimination. (*Vanderhuff* v. *Vanderhuff*, 79 U.S.App.D.C. 153 [144 F.2d 509-510]; *Stewart* v. *Stewart*, 158 Fla. 326, 327-328 [29 So.2d 247, 170 A.L.R. 1073]; *Roberts* v. *Roberts*, 103 Kan. 65, 72 [173 P. 537]; *Panther* v. *Panther*, 147 Okla. 131, 134 [295 P. 219]. See, also, *Flagg* v. *Flagg*, 192 Wash. 679, 686 [74 P.2d 189].)

In view of the reliance of the Conant case on what was thought to be the English rule, perhaps the most illuminating of the modern cases on the subject is *Blunt* v. *Blunt*, [1943] A.C. 517, 169 L.T.R. 33, decided in the House of Lords in 1943. Significantly, the judges in England were for many years reluctant to exercise the discretion given them by the Act of 1857. Eventually, however, the courts fully accepted their responsibility (*Wickens* v. *Wickens* [1918], P.

265, 119 L.T.R. 268; *Wilson* v. *Wilson* [1920], P. 20, 122 L.T.R. 223), and, in *Blunt* v. *Blunt*, Lord Chancellor Simon reviews the factors that should govern the decision in a given case. Among these are the prospect of reconciliation and the interests of the children of the marriage. In keeping with the traditional view of the law toward both marriage and divorce, the Lord Chancellor states that the consideration of "primary importance" is the interest of the community at large. This interest is "to be judged by maintaining a true balance between respect for the binding sanctity of marriage and the social considerations which make it contrary to public policy to insist on the maintenance of a union which has utterly broken down." ([1943] A.C. at 525, 169 L.T.R. at 34; *cf. Hill* v. *Hill*, 23 Cal.2d 82, 93 [142 P.2d 417]; *Weil* v. *Weil*, 37 Cal.2d 770, 783-784 [236 P.2d 159].)

In examining the doctrine of recrimination, we have given the most serious consideration not only to judicial precedent but also to the work of leading scholars and practitioners. Few rules of law have been more widely condemned by the legal profession. In 1948, a committee of experts of the American Bar Association joined with the representatives of other interested groups in the work of the National Conference on Family Life. The bar association's representatives, acting as the legal section of the conference, strongly recommended the elimination of the defense of recrimination. (Report of Legal Section of National Conference on Family Life [1948], pp. 1, 3, 7. See, also, Chafee, Some Problems of Equity [1950], p. 73 et seq.) In view of the statutory provisions on the subject, we are not free to go so far. Moreover, we do not believe that the comparative guilt of the parties will be without significance in every case. We do believe, however, that some of the evils pointed out by the bar association committee can be avoided within the framework of the existing statute if it is kept in mind that the doctrine of recrimination, like the doctrine of unclean hands of which it is a part, is neither puristic nor mechanical, but an equitable principle to be applied according to the circumstances of each case and with a proper respect for the paramount interests of the community at large.

Defendant relies upon *Comfort* v. *Comfort*, 17 Cal.2d 736, 745-752 [112 P.2d 259]. The discussion of recrimination in that case, however, was directed entirely to the question whether or not the recriminatory defense there involved had become inoperative owing to lapse of time. The court did not

consider the language of section 122 of the Civil Code in the light of the clean hands doctrine, nor was that issue raised in the briefs of the parties. The Comfort case therefore does not support the proposition that the doctrine of recrimination precludes the exercise of equitable discretion.

To the extent that the following cases support a mechanical application of the doctrine of recrimination, they are disapproved: *Sweasey* v. *Sweasey,* 126 Cal. 123, 129-130 [58 P. 456]; *Mattson* v. *Mattson,* 181 Cal. 44, 47 [183 P. 443]; *Helpling* v. *Helpling,* 50 Cal.App. 676, 680-681 [195 P. 715]; *Brazell* v. *Brazell,* 54 Cal.App.2d 458, 459 [129 P.2d 117]; *Gough* v. *Gough,* 101 Cal.App.2d 262, 268-269 [225 P.2d 668].

We have concluded that section 122 of the Civil Code imposes upon the trial judge the duty to determine whether or not the fault of the plaintiff in a divorce action is to be regarded as ''in bar'' of the plaintiff's cause of divorce based upon the fault of the defendant. Tested by the considerations discussed above, the evidence in the present case would have been ample to support a finding that the parties' misconduct should not bar a divorce. Reconciliation appears impossible. The trial judge himself observed that ''the marriage here was a failure from the start'' and that ''there is nothing really to keep them together.'' There was evidence that defendant more than once inflicted bodily injury upon plaintiff; that after one severe beating plaintiff attempted to commit suicide by an overdose of sleeping pills; that defendant often boasted in the presence of plaintiff and guests of intimate relations with other women and discussed their physical attributes in detail; that defendant was often intoxicated; that defendant frequently told plaintiff that her daughter by a previous marriage had loose morals; that defendant was insanely jealous of a former suitor of plaintiff and on one occasion seized an alarm clock given plaintiff by the suitor and threw it into the toilet; and that defendant lavishly tipped waiters and spent his money freely in public, but in private life refused to give plaintiff sufficient funds to purchase clothes suitable for her station in life. On the other hand, defendant's evidence was to the effect that plaintiff had invented false accusations against him; that plaintiff had deliberately attempted to ruin his business life by writing a letter to his partner falsely accusing defendant of dishonesty and homosexuality; and that plaintiff had an-

nounced her intention of writing similar letters to other business associates of defendant. If the foregoing facts are true, it is apparent that there has been a total and irremedial breakdown of the marriage. Technical marital fault can play but little part in the face of the unhappy spectacle indicated by this evidence, with its inevitable effect upon the family, friends, neighbors, and business interests of the parties.

Moreover, it is significant that the application of a strict rule of recrimination in the present action does not operate with equal justice. As the spouse entrusted by law with the management and control of the community property (see Civ. Code, §§ 161a, 172, 172a), defendant is in a position to use that property for his personal benefit. Although he has an obligation to support plaintiff, a large discretion is customarily vested in the husband concerning the manner of performing that obligation; in the present case, disagreement and repeated legal actions to obtain support money are almost certain to ensue.

There can be no precise formula for determining when a cause of divorce shown against a plaintiff is to be considered a bar to his suit for divorce, for the divorce court, as a court of equity (*Sharon* v. *Sharon*, 67 Cal. 185 [7 P. 456, 635, 8 P. 709]), is clothed with a broad discretion to advance the requirements of justice in each particular case. In general, however, certain major considerations will govern the court's decision:

1. *The prospect of reconciliation.* The court should determine whether the legitimate objects of matrimony have been destroyed or whether there is a reasonable likelihood that the marriage can be saved. It should consider the ages and temperaments of the parties, the length of their marriage, the seriousness and frequency of their marital misconduct proved at the trial and the likelihood of its recurrence, the duration and apparent finality of the separation, and the sincerity of their efforts to overcome differences and live together harmoniously.

2. *The effect of the marital conflict upon the parties.* If a continuation of the marriage would constitute a serious hazard to the health of either party, as in the case of physical brutality, the court should be reluctant to deny divorce. Although financial considerations can play only a minor role in determining the propriety of divorce, even these may not be entirely ignored if the evidence indicates that marital conflicts are destroying the livelihood of the parties.

*3. The effect of the marital conflict upon third parties.* In every divorce case in which children are involved, their interests are of the utmost concern to the court. The disruptive effect of divorce upon children is to be deplored, but in a given case it may be preferable to violence, hatred, or immorality when these are present in the home. The community as a whole also has an interest. Adultery, desertion, or cruelty, for example, can only discredit marriage; their perpetuation is not lightly to be decreed.

*4. Comparative guilt.* In many ways the guilt of the parties may be unequal—in the gravity of the misconduct involved, in the frequency of its occurrence, or in its effect upon children and others. Moreover, one spouse may demonstrate substantially greater repentance and reform. Marital offenders, therefore, are not necessarily *in pari delicto* before the chancellor. Their comparative guilt may have an important bearing upon whether or not either one or both should be granted relief.

We have concluded that in light of the foregoing discussion the findings and conclusions in the present case are not sufficient to support the determination that recrimination was established. ▇▇▇ It is essential that findings be made on every material issue raised by the pleadings. (*Kusel* v. *Kusel*, 147 Cal. 52, 57 [81 P. 297]; *Fairchild* v. *Raines*, 24 Cal.2d 818, 830 [151 P.2d 260]; *Parker* v. *Shell Oil Co.*, 29 Cal.2d 503, 512 [175 P.2d 838]; *cf. LaMar* v. *LaMar*, 30 Cal.2d 898, 902 [186 P.2d 678].) As we have seen, whether or not the cause of action proved against each spouse is to be regarded as in bar of the cause of action proved against the other spouse is a material issue and must be expressly decided by the trial court before it may be said that recrimination has been decided. ▇▇▇ To decide the issue raised by a plea of recrimination, the court must consider the prospects of reconciliation, the comparative fault of the plaintiff and the defendant, and the effect of the marital strife upon the parties, their children, and the community.

Upon remand of the case for application of the clean hands doctrine as herein indicated, the trial court may decide that one of the parties should be granted a divorce. ▇▇▇ In that event, alimony and more than half of the community property may be awarded to the prevailing spouse as in any other case. It is also possible, however, that a divorce will be granted to both parties (see *Flagg* v. *Flagg*, 192 Wash.

679, 686 [74 P.2d 189]; *Blunt* v. *Blunt*, [1943] A.C. 517, 531 [H.L.]), and it seems advisable to indicate here the rules that should govern the granting of alimony and the apportionment of community property under such circumstances.

 When a divorce is granted to both, alimony may be awarded to either, for the basis of liability for alimony is the granting of a divorce against the person required to pay it. (See Civ. Code, § 139.) Section 146 of the Civil Code provides that if the divorce is granted for extreme cruelty, the court may apportion community property as it deems just, but that statute has been interpreted to permit an award of more than half of the community property only to an innocent spouse. (*Eslinger* v. *Eslinger*, 47 Cal. 62, 64.) When a divorce is granted to both parties, neither is innocent within the meaning of this rule, and the community property must be equally divided.

The judgment is reversed. The appeal from the order denying the motion for a new trial is dismissed. Defendant is to bear the costs of this appeal.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

EDMONDS, J.—Solely upon the ground that there are contradictory, irreconcilable findings about matters material to a proper disposition of the case, I concur in the reversal of the judgment. (*Canfield* v. *Security-First Nat. Bank*, 13 Cal.2d 1, 20 [87 P.2d 830]; *Hollywood Cleaning & P. Co.* v. *Hollywood L. Service, Inc.*, 217 Cal. 131, 137 [17 P.2d 712]; *Los Angeles etc. Land Co.* v. *Marr*, 187 Cal. 126, 132 [200 P. 1051]; *Estep* v. *Armstrong*, 91 Cal. 659, 663-665 [27 P. 1091]; *Learned* v. *Castle*, 78 Cal. 454, 460 [18 P. 872, 21 P. 11].) In view of the conflicting evidence, it would be inappropriate for this court to determine which finding is supported by the greater weight of the evidence and to order judgment accordingly. (*Spaulding* v. *Cameron*, 38 Cal.2d 265, 270 [239 P.2d 625]; *Tupman* v. *Haberkern*, 208 Cal. 256, 269-270 [280 P. 970].)

In my opinion, these conclusions are determinative of the appeal. If, upon retrial, the evidence should disclose that each party has a cause of divorce against the other, as I read the Civil Code, the trial court will have no alternative but to deny each of them a divorce. (Civ. Code, § 111[4].) Likewise, if it should be proved that the conduct of each was provoked by the other, a divorce must be denied either party

because neither one will have shown a cause of divorce. Cruelty which is provoked by the party seeking a divorce is not actionable. (*Harp* v. *Harp*, 204 Cal. 193, 194 [267 P. 101] ; *Popescu* v. *Popescu*, 46 Cal.App.2d 44, 49 [115 P.2d 208].) However, it may be that, although the evidence disclose cruelty on the part of each party, provocation for the acts of one upon the part of the other may be proved. In that event, the trial court properly might award a divorce to the party whose actions were provoked by the other.

This court cannot anticipate what the evidence upon another trial may disclose. The conclusion that the findings are in irreconcilable conflict disposes of the issue before us and the lengthy discourse upon the doctrine of recrimination is unnecessary and unwarranted dictum. However, because of my disagreement with the interpretation placed upon the statutory law of this state, I am compelled to state my views upon that question.

"The legislature has seen fit to make the doctrine [of recrimination] an integral part of the law of this state. It is not for the courts to determine the rightness or wrongness of the doctrine so declared. That is a legislative and not a judicial function." (*Comfort* v. *Comfort*, 17 Cal.2d 736, 752 [112 P.2d 259].)

In effect, the court now repeals sections 111(4) and 122 of the Civil Code. Section 111 provides: "Divorces *must* be denied upon showing: . . . 4. Recrimination; . . ." (Emphasis added.) Section 122 defines recrimination as "a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce."

Ignoring the mandatory "must" of section 111, the majority hold that the trial court may exercise its "discretion" in determining whether to grant a divorce where each party has shown a cause of divorce against the other. Using the language of *Brenot* v. *Brenot*, 102 Cal. 294, 296 [36 P. 672], it is said that "a court of equity is *authorized* to enter a judgment dismissing an action of divorce, where both parties are seeking a decree, and the evidence discloses them to be equally guilty of the misconduct alleged." But in the Brenot case no authority was cited for this conclusion, and the court did not consider the statute. Furthermore, the quoted statement is erroneous in implying that the parties must be equally guilty of the same misconduct. Under section 122, "any cause of divorce" is a sufficient basis for the defense of recrimination. The cause need not be the same as that relied upon by the

other party. (See *White* v. *White,* 82 Cal. 427, 452 [23 P. 276, 7 L.R.A. 799]; *Klemmer* v. *Klemmer,* 42 Cal.App. 618, 622 [187 P. 85].)

Reliance also is placed upon *Glass* v. *Glass,* 4 Cal.App. 604, 607 [88 P. 734]. There the trial court found both parties guilty of extreme cruelty, but granted the plaintiff a divorce. The doctrine of recrimination was not relied upon by either of the parties, nor considered by the court, and the decision is not authority for the proposition that the mandatory language of section 111 may be disregarded.

In the present opinion "recrimination" is not defined. However, the inevitable implication of the analysis of the problem is that there is no such thing. It is acknowledged that a cause of divorce must be proved before the doctrine of recrimination may be applied. The conclusion is then reached that, after the defendant's cause is established, the trial court must determine whether it is "in bar" of the relief sought by the plaintiff.

The fallacy of such circuitous reasoning lies in the misinterpretation of the plain language of the statute. It is assumed that the phrase "in bar of the plaintiff's cause of divorce" refers back to the words "any cause of divorce." However, the structure of the sentence precludes any such interpretation. The phrase beginning with "in bar" is a modifying one deliberately separated from the preceding modifying language by a comma. As diagrammed in *Klemmer* v. *Klemmer, supra,* the sentence reads: "Recrimination is a *showing* by the defendant of any cause of divorce against the plaintiff, *in bar of the plaintiff's cause of divorce.*" (See *De Haley* v. *Haley,* 74 Cal. 489, 492 [16 P. 248, 5 Am.St.Rep. 460].) The word "showing" is modified by two separate, and equal, phrases. The first, "by the defendant of any cause of divorce against the plaintiff," explains the kind of "showing" which must be made. Such showing, if made, is "in bar of the plaintiff's cause of divorce."

The majority say: "Had the Legislature meant to make every cause of divorce an absolute defense, it could easily have provided that: 'Divorces must be denied upon . . . a showing by the defendant of any cause of divorce against the plaintiff.' " They ignore the fact that section 122 is a definition of "recrimination" as used in section 111. In defining "recrimination" as a showing "in bar of the plaintiff's cause of divorce," the code commissioners simply adopted the accepted judicial definition of that term as stated in *Conant*

v. *Conant*, 10 Cal. 249, 256 [70 Am.Dec. 717], and the English cases there cited.

According to the majority opinion, "The California Legislature, in enacting the Civil Code in 1872, did not follow the principles of the Conant case. The code provisions on recrimination made two important departures from the existing law." These, it says, were the requirement that the defendant prove a cause of divorce against the plaintiff and the rejection of the strict rule of the ecclesiastical courts.

But the code did not change the law as stated and applied in the Conant case. By that decision the court did not establish a doctrine that the plaintiff be "without reproach" to secure a divorce. It held that "where the matter pleaded is such as would entitle the defendant to a decree, had it been presented in a bill brought by himself, the relief should be denied." (P. 256.) In using the words "without reproach," it specifically limited them to "similar guilt, or an offence to which the law attaches similar consequences." (P. 258.) Because the now abandoned doctrine of two types of divorce then existed, the court did provide that a lesser guilt would bar a divorce *a vinculo matrimonii*. However, it is important to note that a divorce would be granted *a mensa et thoro* where the guilt of the plaintiff was not sufficient to have established a cause of divorce in the defendant.

In the Conant case the court also rejected the strict rule of the ecclesiastical courts. They had allowed only adultery as a bar to a suit for divorce. Under the Conant decision any offense stated by the statute could be pleaded in bar to' the same or any other offense. This departure from the ecclesiastical rule was adopted by the code commissioners. It is understandable, therefore, that they should have relied upon the general principles upon which the Conant case was decided, rather than upon earlier divorce cases.

The note of the code commissioners states: "This section [sec. 122] rests upon the principle that he who is himself in the wrong cannot be heard to complain in a Court of justice of another's wrong pertaining to the same matter." The analogy which they used is strikingly similar to that stated in the Conant case where it was said: "It is a general principle of the common law that whoever seeks redress for the violation of a contract resting upon mutual and dependent covenants, to obtain success, must himself have performed the obligations on his part." That the code commissioners had

a related principle in mind is clear from their citations of authority. Of the decisions to which they referred, five denied relief to a plaintiff relying upon an illegal or fraudulent contract. In each case, the basis of the holding was the doctrine of *in pari delicto.* (*Collins* v. *Blantern,* 2 Wils. K. B. 341 [Eng.]; *Gregg* v. *Wyman,* 4 Cush. (58 Mass.) 322; *Roby* v. *West,* 4 N.H. 285 [17 Am.Dec. 423]; *Freeman* v. *Sedwick,* 6 Gill (Md.) 28, 29, 39-40 [46 Am.Dec. 650]; *Gregory* v. *Haworth,* 25 Cal. 653, 657.) *Bush* v. *Brainard,* 1 Cow. (N.Y.) 78 [13 Am.Dec. 513], stated the doctrine of contributory negligence as a defense to an action for gross negligence. *Hyatt* v. *Wood,* 4 Johns. (N.Y.) 150 [4 Am.Dec. 258], held that a person having only the naked possession of land cannot maintain an action in trespass against a person having possessory title who has entered by force and evicted the possessor.

None of the decisions cited by the commissioners considered the public policy argument now presented. The full quotation from *Freeman* v. *Sedwick, supra,* the only one of those cases here relied upon, is as follows: "After a careful examination of the authorities, we are brought to the conclusion that Courts of equity have held, and uniformly decided, that it was both the wisdom and policy of the law to withhold all aid or relief from parties in controversies between themselves, who stood strictly *in pari delicto,* which might or could tend to the consummation of agreements entered into in fraud of the law, or the rights of any person. Mr. Justice Story, in his *Commentary on Equity Jurisprudence,* vol. 1, p. 317, sec. 298, says: 'The suppression of illegal contracts is far more likely, in general, to be accomplished by leaving the parties without remedy against each other, and by thus introducing a preventive check, naturally connected with a want of confidence, and a sole reliance upon personal honor. And so, accordingly, the modern doctrine is established. Relief is not granted, where both parties are truly *in pari delicto,* unless in cases where public policy would thereby be promoted.' "

The notes of the code commissioners, annotated by two of them, were first published by H. S. Crocker and Company in an 1872 edition of the Civil Code. In the preface to the annotated edition, those commissioners stated: "In some places the Code modifies or alters what has heretofore been the law. Wherever this occurs the reason for the change is given—the hardships which existed under the former law, and how the

present enactment applies to prevent their future occurrence." (P. vi.)

Following out this purpose the commissioners noted every instance in which it was their intention to depart from the preexisting law. Illustrative of their comments are the following: "Sections 170 and 171 modify the common law in two respects." (§ 170, p. 58.) "This was the rule of the common law. The Commission deemed it advisable to modify it." (§ 710, p. 215.) "The words 'or for' are intended to supersede the doctrine of *Sieman* v. *Austin*, . . ." (§ 853, p. 249.) "This section is a departure from the rule laid down in . . . (the cited) case." (§ 908, p. 260.) "The three preceding sections change the rule of our statutes . . ." (§ 1286, p. 359.) "This is an innovation upon the common law. . . ." (§ 1496, p. 443.) "This is contrary to the former law upon this subject. . . ." (§ 1500, p. 444.) "This Chapter undoubtedly modifies the rule heretofore existing in this State as to mistake of law." (§ 1576, p. 467.) "This section modifies the law heretofore existing." (§ 1714, p. 519.) "This section, and some of the ensuing ones, differ materially from the common law . . ." (§ 1864, p. 573.) Further examples of this careful attention to alterations in the prior law appear in the annotations to sections 245, 296, 400, 954, 1383, 1384, 1488, 1624, 1658, and 1941.

Had the code commissioners intended to modify the doctrine of recrimination, as stated in the Conant case, so drastically as it is now said that they did, certainly they would have been as explicit in the annotation to section 122 as they were in their notes to other sections. It is clear that the commissioners made every effort to leave nothing to implication and to stress each alteration or clarification which was intended by their work. If it was their intention to adopt, as a limitation upon the defense of recrimination, the dictum exception to the doctrine of *in pari delicto* mentioned in the quotation from Mr. Justice Story by the Maryland court in the Freeman case, it would have been a simple matter to word the statute accordingly. Instead, the commissioners provided that "any cause of divorce against the plaintiff" is a sufficient showing in bar of the plaintiff's cause and requires a denial of relief. Rather than stating any modification or alteration of what was theretofore the law, they bolstered the unequivocal language of the statute by explaining that "he who is himself in the wrong cannot be heard

to complain." The authorities which they cited denied relief in each instance. Certainly if they had intended any such exception as is now added to the code section, they would have modified the language of the statute, mentioned that purpose in their annotation, or at least have cited authorities applying the exception to the general rule.

By now saying that "the considerations of policy that prompt the state to consent to a divorce when one spouse has been guilty of misconduct are often doubly present when both spouses have been guilty," in effect, this court repeals the statutory rule of recrimination. Thus, in any case where, by the terms of the statute, recrimination is a bar, it should not be applied because of public policy. Only the embalmed corpse of the doctrine is preserved, impotent in the shroud of standards established "for determining when a cause of divorce shown against a plaintiff is to be considered a bar to his suit for divorce."

Among other standards which the trial court must now use to determine whether the cause proved is "in bar" of the plaintiff's cause of divorce is one called "comparative guilt." No authority is given for this invention, startling as applied to the grounds for divorce, and indeed, none can be found for it. Section 92 of the Civil Code provides that divorces may be granted for any one of seven enumerated causes. No distinction is made between them, nor are there varying degrees of any cause. All stand on an equal footing insofar as the granting of a divorce is concerned. "In this State, the statute has specified certain acts or conduct which shall constitute grounds of divorce and so far as the matrimonial contract is concerned, the Courts cannot distinguish between them, whatever difference there may be in a moral point of view." (*Conant* v. *Conant, supra,* p. 256.)

Whether a cause of divorce is established is simply a matter of proof. If the evidence is sufficient to sustain a decree upon any one of the statutory grounds, a cause of divorce is proved and cumulative evidence does not give it greater sanctity. Either a cause of divorce is established or it is not. Once established, it is neither more nor less effective than any other cause as the basis for a divorce or a bar to the other spouse's cause of divorce. And yet, it is now held, these causes, equal under the law, must in some metaphysical fashion be measured or weighed by the trial judge. By comparing the equal, inequality may be discovered. Beyond the superlative of "extreme" or "utmost" cruelty the court may find an indescrib-

able infinity which is more than utmost, an unimaginable degree of cruelty which is greater than the greatest.

That the doctrine of recrimination has been repealed is made crystal clear by the suggestion "that a divorce will be granted to both parties." The code makes no provision for such a decree and the result is contrary to the requirement that a divorce "must be denied" when recrimination is proved. "Certain consequences are attached to the decree, independent of the dissolution of the marriage contract, and they are generally more favorable to the party obtaining the relief than to the contestant; but a decree cannot be granted in favor of one, and afterwards in favor of the other, as the first would dissolve the marriage, and then no marriage would subsist, upon which the second decree could act; and a decree granting a divorce in favor of each, would be an anomalous proceeding." (*Conant* v. *Conant, supra.*)

The Civil Code contemplates that a divorce can be awarded to only one party. Section 131 provides in part: "If it determines that the divorce ought to be granted, an interlocutory judgment must be entered, declaring that *the party* in whose favor the court decides is entitled to a divorce; . . ." (Emphasis added.)

It is noteworthy than the only American authority cited for the proposition that both parties may be awarded a decree is *Flagg* v. *Flagg,* 192 Wash. 679, 686 [74 P.2d 189], decided in a jurisdiction which has no statute relating to recrimination. Even there, no authority was cited for the holding, nor has the decision since been followed.

The anomaly of awarding a divorce to both parties is further stressed by the discussion of alimony and property rights. The majority say: "When a divorce is granted to both, alimony may be awarded to either, for the basis of liability for alimony is the granting of a divorce against the person required to pay it. (See Civ. Code, § 139.)" But section 139, as amended in 1951, contemplates, in the singular, only "the party against whom the decree or judgment is granted." No provision is made for the situation where a decree is granted against both parties. That such an eventuality was not anticipated by the Legislature is obvious from section 142, which provides: "When the *prevailing party* in the action has either a separate estate, or is earning his or her own livelihood, . . . the court in its discretion, may withhold any allowance to *the prevailing party* out of the separate property of the other party." (Emphasis added.) Clearly, the Legislature did not

foresee a prevailing party against whom the decree might be granted.

By statute, 32 American jurisdictions allow the defense of recrimination. In only three of these may the court, in its discretion, grant a divorce after proof of recrimination. Except for these three, recrimination is, by statute, an absolute defense in the majority of states. (2 Vernier, American Family Laws, p. 87.) The decisions from other states and England, here cited as recognizing judicial discretion, all rely upon different statutes or declare judicial policy in the absence of statute. The policy which underlies these exceptions to the general rule may be commendable. But this court should not usurp the legislative prerogative by the device of interpreting a statute which needs no interpretation, and which has been accepted without question for 80 years. If public policy no longer approves the doctrine of recrimination, then it is for the Legislature, and not for the court, to repeal the statute.

Spence, J., concurred.

SHENK, J., Concurring and Dissenting.—I concur in the judgment of reversal on the ground that the findings are contradictory and irreconcilable. I disagree with the meaning given to the phrase "in bar of the plaintiff's cause of divorce" which appears in section 122 of the Civil Code. It seems to me that those words were inserted in the statute for a purpose foreign to that now ascribed to them.

Section 111 of the Civil Code reads: "Divorces must be denied upon showing . . . 4. Recrimination." The limitation of that defense in an action for divorce is continued in section 122. That section defines "Recrimination" as "a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce." Separate maintenance is an available remedy where a cause of divorce exists (Civ. Code, § 137), but because of a showing of recrimination a divorce may not be granted (§ 111).

There is thus no warrant for disapproving or overruling prior cases. When, as in this case, the court is faced with a showing of recrimination (any cause of divorce) on the part of each spouse in resisting a divorce sought by the other, there is no choice except to deny the divorce to both. On a record which undeniably supports a finding of recrimination on the part of each spouse, the trial court must be assumed to have exercised all of the discretion that it had if the denial of the divorce was based on that finding.